WELLS *v.* STATE OF INDIANA.

[No. 1168S188. Filed September 9, 1970. No petition for rehearing filed.]

Robert L. Sheaffer, of Shelbyville, for appellant.

Theodore L. Sendak, Attorney General, Murray West, Deputy Attorney General, for appellee.

DeBruler, J.—This is an appeal from a conviction for Second Degree Burglary, Acts 1941, ch. 148, § 4, Burns Ind. Stat. Ann. § 10-701(b), in a trial by jury held in the Shelby County Superior Court.

A. Appellant's first allegation of error is that there was insufficient evidence to sustain the conviction. In reviewing this allegation this Court will not weigh the evidence nor resolve questions of credibility, but will look to that evidence and the reasonable inferences therefrom which support the verdict of the trial court. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a reasonable trier of fact could infer that the appellant was guilty beyond a reasonable doubt. Fair v. State (1969), 252 Ind. 494, 250 N. E. 2d 744.

Robert Marshall testified that he was the owner of Robert D. Marshall, Inc., a construction company, and sometime in early December, 1967, the company office was broken into by someone breaking a pane of glass in the door and unlocking it. The company payroll checks which were in a desk drawer were stolen. Among the checks stolen was one made out to Norman Thompson for $50.34. Marshall discovered this in the morning when he went to the office and he called the police around 7:30 to 8:00 a.m. This was the only burglary Marshall had ever had.

Officer Dagley testified that on December 7, 1967, he investigated a report crime at Robert D. Marshall, Inc., office. He found a broken pane in the rear door near the lock, and pry marks on one window.

James Antle testified that in the early part of December, 1967, he picked appellant up at his home around 6:00 p.m. and proceeded to the Blue River Inn for some beer. Appellant and Antle decided to go to the Robert D. Marshall, Inc., office to steal some blank checks, fill them in and cash them. Appellant had worked for Marshall and had been in the office and knew where the blank checks were. Antle let appellant out to go raise a window and sneak in but appellant reported they were nailed shut. The pair decided that appellant would break a window and Antle roared his engine to hide the sound of breaking glass. Appellant returned not with blank checks but with a batch of payroll checks and while Antle drove around appellant selected one to cash. They arrived at the Standard Supermarket in Shelbyville, around 9:00 p.m. and appellant went inside and returned with around $50, half of which he gave to Antle. The rest of the checks were destroyed.

Mrs. Gay testified that on December 6, 1967, she was an employee of the Standard Supermarket in Shelbyville, and that between 8:30 and 9:30 that evening she cash a payroll check of Robert D. Marshall, Inc., payable to Norman Thompson. She identified a photograph of the front side of the check which was for $50.34. She could not identify the man who cashed it but she said he endorsed it at that time.

The state was required to prove that Appellant:

1. Broke and entered,
2. a building which was not a place of human habitation, namely, the office of Robert D. Marshall, Inc.,
3. with the intent to commit a felony, namely, theft.

Appellant argues that the only evidence that would authorize a guilty verdict was the uncorroborated testimony of James

Antle, an admitted accomplice. There is no question that there was ample corroborating evidence for the fact that a burglary had been committed but appellant claims there was no corroboration for the fact that he participated in that crime. Antle was the only witness that directly identified appellant as the perpetrator of the crime, which on the authority of past cases in this court would have been sufficient evidence to sustain the verdict. *Smith* v. *State* (1961) 241 Ind. 601, 174 N. E. 2d 47; *Shepherd* v. *State* (1970), 254 Ind. 404, 260 N. E. 2d 563. However in this case the prosecutor took the highly commendable action of seeking and obtaining evidence which corroborated Antle's testimony that appellant participated in the crime. This evidence consisted in the testimony of Sgt. Buck, a State Police handwriting expert who testified that in his opinion appellant forged the name Norman Thompson on the stolen check. There was ample evidence to sustain the verdict.

B. Appellant next contends that the trial court erred in overruling appellant's objection to a question by the prosecutor put to one of appellant's witnesses named Groff whose testimony was intended to impeach the testimony of Antle. The question was:

> "Now we will ask you, Mr. Groff, if at any time during your being in the Shelby Co. jail, that you ever told any Sheriff, Deputy, or me, that you would enter any plea whatsoever in return for a bottle of paregoric?"

Appellant objected saying "To which we will object, Judge. That's not proper." Appellant did not say what was improper about that question or indicate the basis of the objection. On appeal, for the first time, appellant argues that the question was a foundation question for impeachment and as such was not sufficiently definite in form. This issue should have been presented to the trial court and cannot be raised for the first time on appeal. *Hardin* v. *State* (1970), 254 Ind. 56, 257 N. E. 2d 671. This is not a

case where the objection, though vague or ambiguous, is sufficiently specific due to the context in which it is made to call the trial court's attention to the grounds for the objection. This question occured in a series of questions concerning the witness' addiction to drugs. Prior to this question the following question was asked:

> "Now isn't it a fact further, Mr. Groff, that you told Otha Bishop, the Sheriff of Shelby County, that if he would get you a bottle of paregoric that you would plead guilty to anything?"

Appellant did *not* object to that question at that time. Later he included that question as one of 10 questions which appellant alleged were a basis for mistrial due to their prejudicing the jury. All of this occured *prior* to the question at issue here. If the appellant's unexplained objection called attention to any error it was the same one he had already raised in his motion for mistrial. However this was not argued on appeal.

C. Appellant next contends that the trial court erred in admitting State's Ex. 4, a photograph of the front side of the Robert D. Marshall, Inc., payroll check made out to Norman Thompson which Mrs. Gay cashed on December 6, 1967. Appellant contends that the original check was the best evidence and a copy was not admissible unless the original check was accounted for. The best evidence rule is not applicable here because the record shows that the Exhibit was not offered as a copy substitute for the original check but rather as real evidence in support of Mrs. Gay's testimony. Mrs. Gay testified that it was normal procedure to take a photograph of each check being cashed and that was done by her in this case. The exhibit was offered to demonstrate the results of the procedure testified to by Mrs. Gay. In any case the original check was later introduced in evidence by the State making any error in admitting the photograph harmless.

D. Appellant next contends that the trial court erred in admitting State's Ex. 2 because it was hearsay evidence. Ex.

2 was the partial contents of a police complaint report, with part of the writing on the report covered over and not a part of the exhibit. The exhibit read as follows:

## COMPLAINT REPORT

## SHELBYVILLE POLICE DEPARTMENT

Complainant: Robert D. Marshal      Case Number: 67-115
Address: 1215 S. Miller Street      Date Received: 12-7-67
City: Shelbyville      State: Ind.      Time Received 7:52 a.m.
Phone Number: ____Extension: __      Received By: McKinney
Method of receiving complaint: Ph.      Assigned To: PD
Nature of Complaint: _____      _____
_____      Radio Log Nbr.: #6333
Exact Location: Same      Case Closed: _____
_____      Number Arrests: _____

Initial Complaint: Wants Police to come down that a B & E. of his office (All the information with a line under it was in handwriting in the actual exhibit.) Dennis McKinney, who had been employed as a radio operator by the Shelbyville Police Department in December, 1967, testified that that report was part of the normal records of the Shelbyville Police Department, and he prepared it at the time of the call in the regular course of his duties as radio operator for the Department. The handwriting and name were his but he could only vaguely recall this particular report and could not recall who had made the complaint.

After several unsuccessful offers the prosecutor offered Ex. 2 only *for the purpose of showing the time and date it was received.* Appellant objected that the report contained matters which were hearsay because the result of conversations outside the presence of appellant. The trial court admitted the exhibit as a "business entry" exception to the hearsay rule and appellant argues that this trial court ruling was erroneous.

Hearsay evidence has been defined as follows:

"Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." (McCormack, Evidence § 225)

See also *Trustees of Indiana University* v. *Williams* (1969), 252 Ind. 624, 251 N. E. 2d 439; *Mark* v. *City of Indianapolis, Etc.* (1966), 247 Ind. 511, 219 N. E. 2d 434; *Wayne Works* v. *Hicks Body Co.* (1944), 115 Ind. App. 10, 55 N. E. 2d 382; 5 Wigmore, Evidence, § 1361 (3d ed., 1940); 2 Jones, Evidence, § 268 (Gard ed. 1958); Uniform Rules of Evidence, Rule 63; Model Code of Evidence, Rule 501; Proposed Rules of Evidence for U. S. District Courts, Rule 8-01. The principal reasons for the exclusion of hearsay evidence are that the out-of-court declarant was not under oath, not subject to confrontation by the trier-of-fact, and most importantly, not subject to cross-examination by the accused. McCormack, §§ 224, 225; Wigmore, §§ 1360 to 1365; 2 Jones, § 269. Not all evidence of extra-judicial utterances qualifies as hearsay evidence.

"The theory of the Hearsay rule (*ante*, § 1361) is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-examination. If, therefore, an extra-judicial utterance is offered, not as an assertion to evidence the matter asserted, *but without reference to the truth of the matter asserted,* the Hearsay rule does not apply.

The utterance is then merely not obnoxious to that rule. It may or may not be received, according as it has any relevancy in the case; but if it is not received, this is in no way due to the Hearsay rule.

The prohibition of the Hearsay rule then, *does not apply to all words or utterances merely as such.* If this fundamental principle is clearly realized, its application is a comparatively simple matter. The Hearsay rule excludes extra-judicial utterances only when offered for a special purpose, namely, as assertions to evidence the truth of the matter asserted." 6 Wigmore, Evidence, § 1766 (3d ed. 1940).

See also *Trustees of Indiana University* v. *Williams, supra;* McCormack, § 225; 2 Jones, § 271.

If the questioned evidence is hearsay and does not fall within one of the exceptions to the rule, then it is inadmissible in evidence. *Compton* v. *Fleming* (1846), 8 Blackf. 153. The question for this court then would be whether the erroneous admission of such evidence was harmless error.

One of the well-recognized exceptions to the hearsay rule is that for "business records." Originally there was a distinction made between the business records of a party and those of a third person. The former were admitted in evidence under the "shopbook" exception to the hearsay rule in order to offset the harsh results due to the incompetency of a party as a witness. When that rule of incompetency was abolished the justification for the distinction disappeared and now all business records belonging to any person may be treated alike. 5 Wigmore, § 1518; McCormack, § 282; 3 Jones, § 610.

Business records when offered for the truth of the matters asserted therein, are hearsay since they rely for their credit on someone who at the time he made the record was neither under oath nor subject to confrontation or cross-examination. The exception to the hearsay rule for business records is based on the fact that the circumstances of preparation assure the accuracy and reliability of the entries. McCormack, ch. 32; 5 Wigmore, §§ 1521 to 1522. The common law rule, without benefit of modification by statute, stated in general terms, was that in order to come within this exception the following requirements had to be met:

1) The records offered must have been the original entries;
2) They must have been made in the regular course of business at or near the time of the event recorded;
3) The facts must have been within the first hand knowl- of someone whose business duty it was to observe and report the facts;
4) The witness who had knowledge of the facts must be unavailable.

See McCormack, ch. 32; 5 Wigmore, §§ 1523 to 1530; 2 Jones §§ 290 to 294. The modern trend has been to clarify and simplify the rule by adopting one or another of the model rules, e.g. Uniform Rule of Evidence, Rule 62 (13) ; Proposed Rules of Evidence for U. S. District Courts, Rule 8-03 (b) (6) ; Model Code of Evidence Rule 514 (1).[1] Indiana has not yet adopted such a rule, however there has been some modification of the common law requirements. Note, The Need for a Liberal Business Entry Statute in Indiana, 31 Ind. L.J. 312. The first requirement has been modified in Indiana by Acts 1949, ch. 168, §§ 1 and 2, Burns Ind. Stat. Ann. §§ 2-1656 and 2-1657, which provide for the admission of duplicate copies of the original records. The fourth requirement is satisfied in Indiana even if the witness is present and merely cannot recall the facts so as to testify from memory. *Culver* v. *Marks* (1889), 122 Ind. 554, 23 N. E. 1086. The definition of "business" has been broadened to include every business bank, industry, profession, occupation and calling of every kind. Acts 1949, ch. 168, § 3, Burns Ind. Stat. Ann. § 2-1658. The history of the Indiana rule and the cases up to that time are well discussed in Note, 31 Ind. L.J. 312, *supra*.

The heart of the rule then is the requirement that the observation, reporting, and the recording of the facts *all* be made by someone in the regular course of the business. Without this there is no assurance of the accuracy and reliability of the fact which justifies the admission of the record as evidence of the facts asserted therein. In applying the rule to the case before us we see that Exhibit 2 was filled out by the witness McKinney in the regular course of his duties as an employee of the Shelbyville Police Department. Of all the information placed on the report by McKinney, he had first hand knowledge *only* of the date, time, log number, case number, his name, and the use of a phone. The witness did not have first hand knowledge that the caller *was* Robert Marshall nor that there actually had been such a breaking

---

1. See Appendix for text of these rules.

and entering. The caller, who as far as McKinney knew at the time of recording may or may not have had first hand knowledge of the burglary, was not an employee of the Shelbyville Police Department and was not acting in the regular course of business of the Police Department in observing and reporting the facts to McKinney. Consequently the only portion of Exhibit 2 which was admissible was the part showing the time, date, log number, case number, McKinney's name, and the fact that a phone was used. The fact that in this case such evidence would have been of very dubious relevance is not a consideration on this appeal. In another case it could have been relevant if material to a different issue e.g. whether or not McKinney had filled out a report at that time. *Kelley* v. *Ford Motor Co.* (1937), 280 Mich. 378, 273 N. W. 737.

This decision is in line with the leading case of *Johnson* v. *Lutz* (1930), 253 N. Y. 124, 170 N. E. 517, where the court held that a memorandum concerning an accident prepared by a police officer who wasn't present at the time of the accident and which memo was based on statements made to him by persons present when he arrived was inadmissible as evidence of the facts asserted in the memo about the accident. The person operating in the regular course of business did not have first hand knowledge of the fact and the persons who did have first hand knowledge of the facts were not observing and reporting these in the regular course of business.

The trial court error here is not reversible however, because the appellant was in no way prejudiced thereby. The erroneously admitted evidence merely purported to show that Robert Marshall reported a burglary on December 7, 1967. Appellant did not at the trial and does not on appeal challenge the fact that Robert D. Marshall, Inc., was broken into on December 6, 1967, and that Robert Marshall discovered that fact on December 7, 1967, and reported it to the police at 7:30 a.m. to 8:00 a.m.

E. Appellant next contends that the trial court erred in admitting State's Exhibits 6 through 16, which purport to be

payroll checks from Robert D. Marshall, Inc., payable to Eugene Wells and with the name Eugene Wells written on the back. The exhibits were introduced on the State's rebuttal through Sgt. Douglas Buck, a state police handwriting expert. Prior to the offer of Exhibits 6 through 16, Sgt. Buck had been given Defendant's Exhibit C, two admitted genuine specimens of appellant's handwriting of the name Norman Thompson. The witness was asked if he had compared the handwriting on Defendant's Exhibit C and State's Exhibit 5, the stolen check, and if so what was his conclusion. He said:

> "A. It is my opinion that the author of the handwriting on State's Exhibit C. Defendant's Exhibit C — I am sorry — Defendant's Exhibit C. also authored and wrote the "Norman Thompson" signature appearing on the reverse of State's Exhibit 5."

It was only after that unequivocal testimony that the state offered into evidence Exhibits 6 through 16, as additional specimens of appellant's handwriting to further support the witness' already stated conclusion. With reference to such specimens Acts 1913, ch. 312, § 1, Burns Ind. Stat. Ann. § 2-1723 says:

> "In any proceeding before a court or judicial officer of the state of Indiana where the genuineness of the handwriting of any person may be involved, any admitted or proved handwriting of such person shall be competent evidence as a basis for comparison by witnesses, or by the jury, court or officer conducting such proceeding, to prove or disprove such genuineness."

The state clearly did not comply with this statute. The appellant did not admit that any of the writing in Exhibits 6 through 16 was his, nor did the State make any effort whatsoever to prove that any of the writing in the exhibits was his. The prosecutor asked Sgt. Buck whether he could identify Exhibits 6 through 16 and he replied simply, "Yes, Sir." Then

the prosecutor immediately offered the exhibits into evidence and the trial court admitted them over appellant's objection. There was no testimony that the checks were really from Robert D. Marshall, Inc., and even if they were, there was no evidence at all that appellant wrote on them. *Snider, Executor* v. *Preachers Aid Society* (1942), 111 Ind. App. 410, 41 N. E. 2d 665; *Plymouth Savings and Loan Assoc. No. 2* v. *Kassing* (1919), 72 Ind. App. 1.

Although the admission of these exhibits was error we do not think that it was reversible error. Prior to the admission of these exhibits the witness had already testified that it was his opinion that the author of Exhibit C, admittedly the appellant, was also the author of the endorsement on the reverse side of Exhibit 5, the stolen check. Both of these exhibits concerned the name Norman Thompson. The witness did discuss Exhibits 6 through 16 in his testimony demonstrating how he reached his conclusion. However he also testified[2] that there "was very little weight" given to the checks in the comparison because the points of comparison between the "Eugene Wells" on Exhibits 6 through 16 and the "Norman Thompson" on Exhibit 5, the stolen check, were extremely small in number. The witness at one point said it was almost impossible to make a comparison with so few points of comparison.

To the extent that Exhibits 6 through 16 were comparable, it would seem that they were authored by the same person who

---

2. It has been difficult to determine just what this witness testified to because of the lack of concern on all sides for the state of the written record. The following is an example:

"A. I said that those were offered as standards, that this, plus that, equalled this; but there is very little weight on those checks.

Q. You did say, though, did you not, sir, that the same person who authored that, authored these? Didn't you? We heard you.

A. I said this, plus those. You turned the last switch just to those checks. I didn't say that. It's impossible to compare the checks with this signature, based on a sole, one, letter."

wrote Exhibit C and the endorsement on Exhibit 5. The witness said:

"A. It is my opinion that the author of the reverse endorsement, 'Eugene Wells,' which appears on the reverse of each State's Exhibit 6 through 16, inclusive, and Defendant's Exhibit C, also authored the reverse endorsement 'Norman Thompson,' appearing on the reverse of State's Exhibit 5."

Under these circumstances we think that the erroneous admission of Exhibits 6 through 16 constituted harmless error.

Judgment affirmed.

Hunter, C.J., Arterburn and Givan, JJ., concur; Jackson, J., concurs in result.

## *APPENDIX*

### UNIFORM RULES OF EVIDENCE

RULE 63    Hearsay Evidence Excluded—Exceptions. Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except:

RULE 63 (13)    Business Entries and the Like. Writings offered as memoranda or records of acts, conditions or events to prove the facts stated therein, if the judge finds that they were made in the regular course of a business at or about the time of the act, condition or event recorded, and that the sources of information from which made and the method and circumstances of their preparation were such as to indicate their trustworthiness. . . .

### PROPOSED RULES OF EVIDENCE
### FOR THE
### U. S. DISTRICT COURTS AND MAGISTRATES

Rule 8-03 (b) (6)    Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in

any form, of acts, events, conditions, opinions, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, all in the course of a regularly conducted activity, as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

## MODEL CODE OF EVIDENCE

RULE 514 (1) Business Entries and the Like. A writing offered as a memorandum or record of an act, event or condition is admissible as tending to prove the occurrence of the act or event or the existence of the condition if the judge finds that it was made in the regular course of a business and that it was the regular course of that business for one with personal knowledge of such an act, event or condition to make such a memorandum or record or to transmit information thereof to be included in such a memorandum or record, and for the memorandum or record to be made at or about time of the act, event or condition or within a reasonable time thereafter.

NOTE.—Reported in 261 N. E. 2d 865.