James SMITH, Jr., Appellant,

v.

STATE of Indiana, Appellee.

No. 882S319.

Supreme Court of Indiana.

Nov. 17, 1983.

Hugh G. Baker, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

James Smith, Jr., was convicted in a jury trial of confinement and rape, in violation of Ind.Code § 35–42–3–3 and Ind.Code § 35–42–4–1. Alibi evidence was presented by the defendant who testified that at the time of the alleged offense he was attending a business seminar for hair stylists at a motel. Rebuttal evidence was provided by the sales and catering manager for the motel who on behalf of the prosecution identi-

fied State's Exhibit # 13 as a page from the function reservation book of the motel which reflected business reservations for the day in question. A hearsay objection was made and overruled. Appellant Smith challenges that ruling on appeal.

## I.

A summary of facts relating to Exhibit # 13 are as follows: In rebuttal to the alibi evidence, the prosecution called the sales and catering manager for the motel as a witness. This witness had been the personnel director and not the sales and catering manager at the motel on July 21, 1980, the date of the alleged crime, but took over the latter position on August 1, 1980. She described her present duties as making and arranging for reservations with business groups coming into the motel, and that keeping records of the bookings was part of her job. She stated that handwritten entries were made in the function reservation book by the manager or by the secretary or assistant manager who worked in the office. The witness produced the function reservation book for the last six months of 1980. The witness testified that the previous manager from whom she had taken over was no longer employed at the Holiday Inn. She testified further, in a rather awkward fashion, that Exhibit # 13 was "July 21st, 1980" and continued on that the reservations recorded for that day were for a manufacturing concern and a hamburger chain, and that the exhibit was a record kept in the normal course of business and reflected those reservations for July 21, 1980.

The page of the reservation book is divided by vertical lines into three columns headed: morning, afternoon, and evening. Each of these columns is divided by horizontal lines into boxes calling for entries of "group", "Tel.", "address", "function", "etc." Two groups are identified in handwritten entries on the page as McDonald and Hurco.

The State's Exhibit # 13 was admitted on the basis that it fell within the business records exception to the hearsay rule. Ap-

pellant contends that the foundation for it failed to qualify the document for this treatment in most respects. In *Wells v. State,* (1970) 254 Ind. 608, 261 N.E.2d 865, the Court stated the following in describing the history and character of the business records exception,

"The heart of the rule then is the requirement that the observation, reporting, and the recording of the facts all be made by someone in the regular course of the business. Without this there is no assurance of the accuracy and reliability of the fact which justifies the admission of the record as evidence of the facts asserted therein." 254 Ind. at 616, 261 N.E.2d 865.

The Court went on to state the requirements of the common law rule:

"1) The records offered must have been the original entries;

2) They must have been made in the regular course of business at or near the time of the event recorded;

3) The facts must have been within the first hand knowledge of someone whose business duty it was to observe and report the facts;

4) The witness who had knowledge of the facts must be unavailable." 254 Ind. at 615, 261 N.E.2d 865.

*See also American United Life Ins. Co. v. Peffley,* (1973) 158 Ind.App. 29, 301 N.E.2d 651. The fact sought to be proved by the reservation book was that no seminar for hair stylists was held at the motel on July 21, 1980. While the reservation book would not necessarily persuade one of this fact beyond doubt, it would certainly be relevant to a demonstration of that fact. The testimony in support of the exhibit could have been more direct, however, the testimony and reasonable inferences from it were adequate. The testimony may be summed up as follows.

The exhibit offered is the actual page from the reservation book with handwritten entries. It is not a summary or report. It constitutes the original entries. A reservation is an agreement between the

hotel or guest to rent space at a time certain. From a written record of it, motel personnel would know in advance how to prepare the space for the particular use contemplated. It is therefore reasonably inferable that the originals of such entries are made in the regular course of hotel business at or near the time the reservation is made.

The witness testified that the entries were written by one of the three employees in the office, either the manager or one of the other two acting under her supervision, but she did not know which of the three actually did so. It was reasonably deducible from this testimony that the office employee who inserted the handwritten matter in the reservation book did so while having first hand knowledge of the obligation assumed to reserve space for business seminars. Appellant contends that the foundation is inadequate unless the identity of the individual making the entry be shown. Such proof is not required. It is sufficient if that individual is identified as being one of three comprising this small office operation. *Jones v. State,* (1977) 267 Ind. 205, 369 N.E.2d 418.

Appellant also contends that the foundation is insufficient in that it does not show the unavailability of the prior office manager since the witness testified that she was employed across town at the motel of another chain. It is sufficient if the person having a duty to make and maintain the record has left the employ, and has been replaced by another. The foundation here provides the requisite assurance of accuracy and reliability for admission as a regular and routine business record.

## II.

Appellant next claims that three factors operated at the trial to prevent the jury from having a fair and reasonable opportunity to evaluate the credibility of the alleged victim. They are: 1) Exhibit # 13, the reservation book, "allowed" the unreasonable inference that no seminar for hair stylists had taken place as testified to by appellant, 2) the record provides no support for the conclusion that the victim complied, prior to completion of her testimony, with the order for separation of witnesses, and 3) that the trial court erroneously permitted the prosecution to present and examine two of its witnesses between the alleged victim's direct examination and her cross-examination.

The first contention above is met in section I of this opinion. The exhibit was properly admitted and the inference stemming from it that no hair stylist seminar occurred as testified to by appellant was not unreasonable. Appellant had a full and complete opportunity to establish his alibi by independent evidence and, more importantly, point out through argument of counsel or the production of further specific evidence in reply, any weakness in the inference. There was certainly nothing remarkable or surprising about the move of the prosecution at trial in presenting the reservation book to meet the alibi evidence.

The second factor above refers to the possibility that the victim may have remained in the courtroom in contravention of the trial court order of separation of witnesses. This Court is being asked to evaluate the effect of a violation of the court order where the violation is not established on the record. This we will not do. Ind.R.App.P. 7.2.

Regarding the third factor, the record discloses that the direct examination of the alleged victim was concluded immediately before the trial court recessed for the lunch hour. Following that recess, the court permitted the State to present two witnesses. The direct and cross-examination of these two witnesses is contained in twenty-four pages of the written transcript before us. Following the testimony of these two witnesses, the cross-examination of the victim commenced and was completed that same afternoon. It is evident that the delay between the conclusion of the direct testimony of the victim and the commencement of her cross-examination was not long, and therefore its impingement upon the efficacy of cross-examination was

not prejudicial. The delay here would not approach that commonly occurring when a witness's direct examination is nearly concluded at the close of the trial day, requiring cross-examination to be conducted the next morning. Upon consideration of the three factors identified, the only conclusion warranted is that they do not support the contention that the jury did not have a reasonable opportunity to evaluate the credibility of the alleged victim.

### III.

The last appellate claim presented here is that there was insufficient evidence of the use or the threat of use of deadly force, an element of the class "A" felony of rape. Ind.Code § 35–42–4–1(a).

"Deadly force" is defined as "force that creates a substantial risk of serious bodily injury." Ind.Code § 35–41–1–2. "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, unconsciousness, extreme pain, or permanent or protracted loss or impairment of the function of a bodily member or organ." *Id.*

The alleged victim testified that she was "grabbed from behind, and thrown more or less down onto [her] back" and later when she started screaming the assailant "put his hand over my mouth and over to my nose to where it was hard to breathe, at one point it felt as though I was going to black out." When she tried to resist, he told her, "Shut up or I'm going to kill you." Dr. Larry Corbett, the emergency room examining physician, testified that the alleged victim had pain in her jaw but it was not bruised, cut or broken.

In *Calbert v. State,* (1981) Ind., 418 N.E.2d 1158, we considered the same statutory language in a case of like factual dimension. There the victim was thrown to the floor, sat up, bitten and repeatedly slapped. She was told by her assailant that he would kill her. We concluded:

"We agree that the statute requires a showing of more than an idle threat. . . .

The threats to kill here were uttered in a context in which appellant was actually inflicting injury on S.F. and we believe that these threats are within the contemplation of the statute." 418 N.E.2d at 1160.

Here, the ability of the victim to breathe was cut off when the assailant placed his hand over her mouth and nose. She was almost rendered unconscious. The resulting risk of doing serious bodily harm was more substantial here than it was in *Calbert.* We therefore conclude that the evidence was of such substantial probative value that upon it the jury could reasonably infer beyond a reasonable doubt that appellant effectuated his felonious intent through the threat of the use of deadly force. The evidence was sufficient to sustain the verdicts.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.