Donald L. JONES and Central Timber Corporation, Defendants-Appellants,

v.

MARENGO STATE BANK, Plaintiff-Appellee.

No. 63A01–8712–CV–00335.

Court of Appeals of Indiana, First District.

July 25, 1988.

Gerald M. Arthur, Petersburg, Gerald R. Thom, Thom & DeMotte, Jasper, for defendants-appellants.

Roger S. Curry, Schneider, Lett, Shaneyfelt & Curry, Jasper, for plaintiff-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Donald L. Jones and Central Timber Corporation appeal from the Pike Circuit Court's judgment in favor of the Marengo State Bank on three (3) promissory notes. We affirm.

## FACTS

Donald J. Jones is the owner and president of Central Timber Corporation, a sawmill and lumber company located in Petersburg, Indiana. Jones and Central Timber borrowed money from Marengo State Bank (hereinafter Bank) through three (3) separate financing transactions. The first transaction entered into between the Bank and Jones occurred on July 9, 1985, and involved a $40,000 loan to Jones for the purchase of a ten percent (10%) interest in Reid Transportation, a trucking firm. To obtain the loan Jones filled out a loan application form which among other things described the property Jones would give as collateral for the loan. Originally Jones offered five (5) over-the-road tractors, one (1) W–18 Case Articulate Loader, one (1) 2010 F John Deere Fork Lift, and one (1) 1974 Parkway Mobile Home.

Glenn Morgan, the president of the Bank at the time of the first transaction, processed the $40,000 loan application. The Bank approved the loan and lent Jones the $40,000. In return for the funds Jones signed a promissory note (No. 131929) and entered into a security agreement which gave the Bank a security interest in various pieces of equipment and property as collateral for the loan. However, immediately prior to the execution of the promissory note, the Bank examined the titles to the over-the-road tractors and rejected them as collateral because they already had liens against them. Jones then offered a 1972 Fruehauf trailer and a 1973 Mack tractor in place of the five (5) over-the-road tractors. After the note was signed and executed the Bank examined the Fruehauf trailer and the Mack tractor and their titles and accepted them as collateral. Accordingly, the loan application was changed to show the rejection of the over-the-road tractors and the acceptance of the Fruehauf and Mack as collateral. Finally, on July 9, 1986, the promissory note and security agreements were executed and the Bank gave Jones $40,000. Thereafter, Jones gave Reid Transportation $30,000 and retained $10,000 to cancel a debt Reid Transportation had with Central Timber. In August of 1985, Jones forwarded the Fruehauf and Mack titles to the Bank, whose name was added to the titles as lien holder. Thereafter, a loan officer for the Bank, Mike Smith, added the Fruehauf and Mack and their serial numbers to the Bank's copy of the promissory note. In January of 1986, Jones defaulted on the $40,000 note. The Bank extended the repayment time and Jones executed a renewal promissory note (No. 133156) for a prin-

cipal of $39,639.72. Jones defaulted on the renewal note.

The second transaction also involved a loan. The Bank lent $5000 to Jones to purchase an ASM trailer, and in return Jones signed a promissory note (No. 132179). This note was renewed on February 6, 1986, and the renewal note was renewed on May 8, 1986, by another renewal promissory note (No. 133849). The principal on the last renewal note was $4,166.47. Jones defaulted on this note also.

The third transaction also involved a loan. The Bank gave this loan to Jones on January 7, 1986, and in return Jones executed a promissory note in the amount of $8,199.54 and gave the Bank a security interest in a 1981 Lincoln Automobile. Although some principal on this note was paid, Jones ultimately defaulted on this note also.

On August 13, 1986, Jones and Central Timber initiated an action in Federal District Court, (*Jones v. Marengo State Bank* No. NA 86–188–C), which alleged violations of federal banking laws and regulations, and alleged fraud. On October 30, 1986, the bank filed a complaint against Jones in the Pike Circuit Court to collect on the three (3) defaulted notes. The Bank's complaint requested prejudgment possession, foreclosure, and sale of the collateral with the proceeds to be applied to a judgment in an amount that equalled the total of the three (3) notes, expenses, costs, attorneys fees, and interest. On November 10, 1986, Jones and Central Timber filed an Answer, Affirmative Defenses, a Counterclaim for damages and an Affidavit. Jones also requested a jury trial.

On November 19, 1986, the trial court conducted a hearing pursuant to Indiana Code section 34–1–9.1–1 et seq., and denied the Bank's request for prejudgment possession. On January 13, 1987, a pretrial conference was held and the court issued a pretrial order. The pretrial order stated that the court had jurisdiction and set out the schedule to be followed by the parties. In part, the schedule provided for the following:

"(b) Defendant shall file list of defendant's prospective witnesses and exhibits and shall file the specific acts of defense alleged by the defendant and on which defendant intends to produce evidence at trial fifty (50) days prior to trial date." Record at 102.

On February 26, 1987, the Bank filed a motion for summary judgment. On May 26, 1987, a hearing was held on the Bank's motion for summary judgment, and the trial court took the motion under advisement. The trial court also held an additional pretrial conference on the same day, in which the trial court reconsidered the prior decision to grant a jury trial, heard statements from both sides, and revoked its decision and denied Jones's request for a jury trial. On June 4, 1987, the trial court granted the Bank's motion for summary judgment with regard to the promissory notes connected to the second and third transactions (*i.e.,* promissory note Nos. 133109 and 133849), and entered a judgment in favor of the Bank for $7,804.10 and $4,554.93 for a total judgment of $12,359.03. The trial court ordered foreclosure on the security interests held in the ASM trailer and the 1981 Lincoln Automobile. The court ordered Jones to deliver this property to the sheriff, who was authorized to sell the property at public auction. The court further ordered that the proceeds be applied to the costs, and the separate amounts due on the notes as reflected by the judgments. The trial court, however, reserved the issue of attorney fees recoverable under these notes.

On June 9, 1987, a bench trial was held on the remaining issues of the Bank's complaint, which included the first promissory note and attorney fees, and also addressed the affirmative defenses and counterclaims raised by Jones. After the hearing, the trial court took all matters under advisement. On July 31, 1987, the trial court entered judgment in favor of the Bank on the complaint, and against Jones on the counterclaim. The court ordered foreclosure on the property listed in the security agreement. Thus, the court ordered Jones to deliver the 1974 Parkway Mobile

Home, the W–18 Case Articulate Loader, and the John Deere Forklift to the sheriff for sale. The court further ordered that the proceeds be applied to the judgment entered in favor of the Bank on the promissory note, which included principal of $39,639.72, interest of $9,138.69, and attorney fees of $5000 for a total of $53,778.41, plus post-judgment interest. Jones appeals from this judgment and the trial court's grant of summary judgment on the other two (2) notes.

## ISSUES

Rephrased and renumbered, Jones presents the following six (6) issues on appeal:

1. Whether the trial court erred by denying Jones's request for a jury trial?

2. Whether the trial court erred by granting summary judgment on the promissory notes connected to the second and third transactions between Jones and the Bank?

3. Whether the trial court committed reversible error by admitting Plaintiff's Exhibit 2A into evidence?

4. Whether the trial court erred by rejecting Jones's defense of alteration and by entering judgment in favor of the Bank on the $40,000 loan transaction?

5. Whether the trial court erred by entering judgment against Jones on his counterclaim for fraud?

6. Whether the trial court erred by hearing this case since Jones previously had filed a related case in federal court?

## DISCUSSION AND DECISION

*Issue One*

 Jones first argues that the trial court erred by denying his request for a jury trial. We disagree. Indiana Rules of Procedure, Trial Rule 38(A) governs the issue of whether a case is triable by jury or by court, and provides as follows:

"Causes triable by court and by jury. Issues of law and issues of fact in causes that prior to the eighteenth day of June, 1852, were of exclusive equitable juris-

diction shall be tried by the court; issues of fact in all other causes shall be triable as the same are now triable. In case of the joinder of causes of action or defenses which, prior to said date, were of exclusive equitable jurisdiction with causes of action or defenses which, prior to said date, were designated as actions at law and triable by jury—the former shall be triable by the court, and the latter by a jury, unless waived; the trial of both may be at the same time or at different times, as the court may direct."

Thus, the right to a jury trial is subject to the determination of whether the case involves an equitable or legal cause of action. *Hiatt v. Yergin* (1972), 152 Ind. App. 497, 511, 284 N.E.2d 834, 842, *trans. denied.* In making the equitable/legal determination the court must elicit the main theory of the case by examining the complaint and pleadings and their general scope and tenor. *Id.*, 152 Ind. App. at 518, 284 N.E.2d at 846. However, if an essential part of a cause of action is equitable the rest of the case is drawn into equity. *Id.* 152 Ind. App. at 517, 284 N.E.2d at 845. Furthermore, once equity obtains jurisdiction over a case, a counterclaim raising legal issues will not oust the equitable jurisdiction. *Berkemeier v. Rushville National Bank* (1984), Ind. App., 459 N.E.2d 1194, 1197; *Farmers Bank and Trust Co. v. Ross* (1980), Ind. App., 401 N.E.2d 74, 75, *trans. denied; Id.* 152 Ind. App. at 518, 284 N.E.2d at 845.

 In the present case, contrary to Jones's contentions, the Bank's complaint originally involved mixed requests for legal and equitable relief. The Bank requested not only prejudgment possession, but also foreclosure of their security interests. An action to foreclose a security interest is essentially equitable. *Brown v. Russell and Co.* (1886), 105 Ind. 46, 55, 4 N.E. 428, 433; *Berkemeier*, at 1197; *Ross*, at 76; *George v. Massey Harris Co.* (1941), 109 Ind. App. 305, 312–13, 34 N.E.2d 956, 959. The issue of prejudgment possession was not the main theory of the Bank's complaint and was denied by the trial court prior to trial. Thus, the case essentially

was equitable and triable by the court. Jones's filing of a counterclaim did not prohibit a trial by the court. Therefore, the trial court did not err by denying a jury trial.

*Issue Two*

Jones argues next that the trial court erred by granting summary judgment to the Bank on the promissory notes and security interests connected to the second and third loans the Bank gave Jones. An appeal from the grant or denial of summary judgment is reviewed under the same standard used by the trial court. *Ogden Estate v. Decatur County Hospital* (1987), Ind. App., 509 N.E.2d 901, 902, *trans. denied.* Accordingly, a trial court's grant of summary judgment will be upheld if no issue of material fact exists and the movant is entitled to judgment as a matter of law. *Id.* The movant bears the burden of establishing the propriety of summary judgment. *Id.* All facts and the inferences to be drawn therefrom are viewed in a light most favorable to the non-movant. *Id.*

In the present case, the trial court granted summary judgment to the Bank and ordered foreclosure of the security interests found in promissory note numbers 133849, and 133109. The undisputed facts reveal that Jones executed the foregoing notes, which provided the Bank with security interests in an ASM trailer, and a Lincoln automobile, respectively. The undisputed facts also indicate that Jones defaulted on these notes. Jones's bald assertions in his appellant's brief which suggest that a material issue of fact existed as to whether he defaulted under the notes are unsupported by the record. The Affidavit of Michael Smith indicates that Jones failed to make any payments on the note secured by the ASM trailer, and although Jones made payments on the note secured by the Lincoln automobile, Jones failed to make any payments after November 20, 1986. No evidence exists in the record to dispute these facts. Thus, no material issue of fact existed as to Jones's default, and the Bank was entitled to a foreclosure judgment on the security interests of these notes. Therefore, the trial court did not err by granting summary judgment on these two (2) notes.

*Issue Three*

Jones argues next that the trial court erred by admitting Plaintiff's Exhibit 2A into evidence under the business record exception to the hearsay rule. Plaintiff's Exhibit 2A was a Verification of Information form that was filled out in connection with Jones's loan application for $40,000. Jones acknowledges that hearsay evidence is admissible under the business records exception rule if the offering party shows:

"(1) That the record is the original or first permanent entry,

"(2) That it was made in the ordinary course of business,

"(3) That it was made at or near the time of the occurrence recorded,

"(4) By a person with personal knowledge of the matters recorded, and

"(5) A business duty to record them."

*Wilson v. Jenga Corp.* (1986), Ind. App., 490 N.E.2d 375, 376; *Baker v. Wagers* (1984), Ind. App., 472 N.E.2d 218, 221; *American United Life Ins. Co. v. Peffley* (1973), 158 Ind. App. 29, 36–37, 301 N.E.2d 651, 656, *reh. denied* 158 Ind. App. 29, 306 N.E.2d 131. Jones argues however that Indiana also has stated a sixth requirement that "the person who had knowledge of the facts must be unavailable." *See Smith v. State* (1983), Ind., 455 N.E.2d 606, 607; *Wells v. State* (1970), 254 Ind. 608, 615, 261 N.E.2d 865, 870. Jones argues that this last requirement was not met because Glenn Morgan, the person who had knowledge of the verification for the $40,000 loan, could have testified, and was the proper witness to lay the foundation for the introduction of this evidence.[1] There-

---

1. This court notes that Jones also makes several other arguments challenging the admissibility of this evidence. However, Jones objected to this evidence at trial based upon an alleged failure to meet the unavailability requirement and did not raise any of the other requirements of the business record exception. Failure to raise a specific objection and argument at trial waives

fore, Jones argues the trial court committed reversible error by admitting this evidence under the business record exception. Jones is mistaken.

■ The unavailability requirement was sufficiently established in the present case. The unavailability requirement is not a crucial element to the admissibility of hearsay under the business record exception. *Wells*, 254 Ind. at 616, 261 N.E.2d at 870. As stated in *Wells*, "[t]he heart of the rule then is the requirement that the observation, reporting, and the recording of the facts *all* be made by someone in the regular course of the business." *Id.* Thus, the unavailability requirement can be met with a minimal showing. *Smith*, at 608; *Id.* The supreme court noted in *Smith* that, "It is sufficient if the person having a duty to make and maintain the record has left the employ, and has been replaced by another." *Smith*, at 608. While the *Wells* court stated that, "[t]he [unavailability] requirement is satisfied in Indiana even if the witness is present and merely cannot recall the facts so as to testify from memory." *Wells*, 254 Ind. at 616, 261 N.E.2d at 870.

■ In the present case, Glenn Morgan no longer worked for the Bank and also used Plaintiff's Exhibit 2A to refresh his memory as to when and what actions were taken to verify the information connected to the $40,000 loan. Record at 537–38. Thus, as in *Smith*, and *Wells*, the unavailability requirement was established sufficiently. Furthermore, the heart of the business record rule was established when Mike Smith testified that the observation, reporting and recording of the facts in the Verification of Information form all were made by someone in the regular course of the Bank's business. Also this court disagrees with Jones's argument that the admission of this evidence prejudiced him. Subsequent testimony by Glenn Morgan established that the information given to the Bank was verified in connection with the Bank's loan making procedures. There-

the issue for appeal. *Carson v. Ross* (1987), Ind. App., 509 N.E.2d 239, 243, *trans. denied.* Therefore, Jones has waived these other arguments,

fore, the trial court did not err by admitting Plaintiff's Exhibit 2A into evidence.

*Issue Four*

■ Jones argues next that the trial court erred by rejecting his defense of alteration, and by entering judgment in favor of the Bank on the renewal promissory note No. 133156. In challenging the trial court's rejection of an affirmative defense, Jones appeals from a negative judgment, and accordingly, must establish that the trial court's decision was contrary to law. In reviewing the trial court's decision this court neither reweighs the evidence nor judges witness credibility. Rather, this court considers only that evidence and all the reasonable inferences to be drawn therefrom which favor the trial court's decision. This court will not disturb the trial court's decision unless the evidence and inferences lead unerringly to a conclusion that is opposite from the one reached by the trial court. *Steward v. City of Mount Vernon* (1986), Ind. App., 497 N.E.2d 939, 942; *Communications Workers of America, Local 5701 v. Drake* (1985), Ind.App., 487 N.E.2d 821, 823.

■ Indiana Code section 26–1–3–407 provides for the defense of alteration, as follows:

"Alteration.—(1) Any alteration of an instrument is material which changes the contract of any party thereto in any respect, including any such change in

(a) the number or relations of the parties; or

(b) an incomplete instrument, by completing it otherwise than as authorized; or

(c) the writing as signed, by adding to it or by removing any part of it.

(2) As against any person other than a subsequent holder in due course

(a) alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense;

and this court addresses only the unavailability argument.

(b) no other alteration discharges any party and the instrument may be enforced according to its original tenor, or as to incomplete instruments according to the authority given.

(3) A subsequent holder in due course may in all cases enforce the instrument according to its original tenor, and when an incomplete instrument has been completed, he may enforce it as completed."

Thus, to provide a valid defense to enforcement of an instrument the alteration must be both material and fraudulent, otherwise a party will not be discharged. In the present case, the evidence established that an alteration of the original note occurred when the Bank added to the face of the note a Fruehauf trailer and a Mack tractor as security. However, the evidence does not lead unerringly to the conclusion that this alteration was fraudulent. Although Jones testified that he did not agree to provide the trailer or tractor as security and did not consent to the alteration of the note, the evidence also indicated that the Bank believed the opposite. This evidence suggests either fraud or a mistake between the parties, but does not establish unerringly the conclusion that the Bank acted fraudulently. Therefore, the trial court did not err by rejecting Jones's defense of alteration.

Jones challenged the trial court's entry of judgment in favor of the Bank on the renewal promissory note No. 133156 based upon the premise that the original note was illegally altered. However, the trial court rejected this defense and we hold the trial court's rejection was not improper. Therefore, since the alteration did not invalidate the original note, it properly could serve as consideration for the renewal promissory note, and the trial court did not err by entering judgment in favor of the Bank for the amount owed under the renewal note.

*Issue Five*

■ Jones argues next that the trial court erred by entering judgment against Jones on his counterclaim for fraud. This issue also involves an appeal from a negative judgment. Unless Jones establishes that the trial court's decision is contrary to law this court will not reverse. A decision is contrary to law only if the evidence leads unerringly to a conclusion that is opposite to the one reached by the trial court. Therefore, if the evidence conflicts or differing conclusions could be drawn from the evidence we will uphold the trial court's decision.

In the present case, the evidence does not lead unerringly to a conclusion that fraud tainted the $40,000 loan transaction. Although Jones presented evidence which suggested that Glenn Morgan fraudulently represented that he would repay the loan, this evidence was contradicted by the testimony of Glenn Morgan. Therefore, the evidence does not lead to the singular conclusion of fraud and the trial court did not err by entering judgment against Jones on this counterclaim.

*Issue Six*

■ Jones argues last that the trial court erred by holding a hearing in this case because a related case had been filed previously in a federal court. We disagree. Jones waived this issue by failing to preserve the issue prior to trial. Although Jones raised an affirmative defense which alleged that the same action was pending in another court, the record indicates that no motion was made prior to trial to dismiss the suit based upon this ground. Jones also failed to raise this among his defenses to be argued at trial, as was required by the pretrial order. Therefore, the trial court did not err by proceeding to trial.

■ Jones's argument under this issue also fails on the merits. Jones correctly notes that general principles of comity and judicial economy provide that when a state and federal court have concurrent jurisdiction over an action that is not strictly in personam the court whose jurisdiction first attaches to the property holds it to the exclusion of the other until its jurisdiction is exhausted. 7 I.L.E. Courts § 137 (1958). However, a trial court's decision to go forward with jurisdiction does not constitute reversible error when the case is in personam or when the party asserting concurrent jurisdiction fails to establish a pending ac-

tion in another court. *Id.* In the present case, Jones failed to establish reversible error. Although Jones offered a copy of the complaint filed in federal court, the Bank objected to this evidence for lack of certification and it should have been excluded on this basis. *See,* Indiana Code sections 34–1–17–7, and 34–1–18–7; Indiana Rules of Procedure, Trial Rule 44. In addition, this evidence established only the commencement of the federal suit; Jones failed to establish that the federal suit was pending at the time of the state trial. Therefore, the trial court did not err and the judgment in favor of the Bank is affirmed.

Affirmed.

ROBERTSON and HOFFMAN, JJ., concur.