Timothy S. **BAKER** and Beverly J. Baker, Appellants–Plaintiffs,

v.

**R & R CONSTRUCTION, INC.,** Appellee–Plaintiff,

and

**First Bank of Lafayette,** Appellee–Defendant.

No. 79A02–9410–CV–655.

Court of Appeals of Indiana.

March 15, 1996.

Rehearing Denied June 3, 1996.

ment of the offense. *See Kimberling v. State,* 520 N.E.2d 442 (Ind.1988).

Michael E. Douglas, Frankfort, for Appellants.

Ray Bradford Merritt, David W. Haniford, Lafayette, for Appellees.

## OPINION

ROBERTSON, Judge.

This dispute arose out of the construction of a new home. The parties are 1) the homeowners, Appellants Timothy S. and Beverly J. Baker [the Bakers], 2) the building contractor, Appellee R & R Construction, Inc. [Builder], and 3) the bank that financed the project, Appellee First Bank of Lafayette [Bank]. Ultimately, two lawsuits were consolidated into this one and all claims and counterclaims were tried to the bench. The trial court awarded judgment in favor of the Builder and against the Bakers in the following amounts: 1) $3,261.01 on a mechanic's lien, 2) $50,001.20 representing twice the amount of certain checks drawn on the Bank which the Bakers had ordered the Bank to stop payment on (recovered under the remedy provided for damages for property loss caused by a criminal act as provided under Ind.Code 34–4–30–1), and 3) approximately $10,000.00 in attorney fees. The trial court ruled against the Bakers on their claims against the Builder and the Bank. This appeal ensued.

On appeal, the Bakers have filed a 75 page brief in which they raise twenty issues including subparts. Also, they have filed a 56 page appendix to their brief which includes a substantial amount of additional argument along with a great deal of documentary evidence including various lists, transaction itemizations, inspections reports, construction estimates, and logs of accounting journal entries.[1] The record in this case consists of

1. Baker's counsel is referred to *Emerson v. Markle,* 539 N.E.2d 35, 37 n. 2 (Ind.App.1989), *trans. denied,* in which we commented upon the propri-

almost 3000 pages bound in twelve volumes. We restate, consolidate, and reorganize the Bakers' concerns into five issues. We reverse the judgment based upon I.C. 34–4–30–1. In all other respects, we affirm.

## FACTS

The facts in the light most favorable to the trial court's judgment reveal that the Bakers wished to build a home on some land they owned. The Bakers contracted with Builder to build the home for a fixed price of $170,000.00. The Bakers obtained a construction loan from the Bank in the amount of $175,000.00. The construction loan proceeds were to be disbursed in proportion to the Bank's inspection reports of the progress made on the construction. The checks issued from the Bank under the construction loan agreement were made payable to the Bakers (and thus required the endorsement of one of the Bakers) in addition to the Builder or the various subcontractors who were to be paid.

On April 6, 1992, construction of the home began. The Bakers were closely involved in the construction of their home and were present at the site nearly every day. Almost immediately, the project experienced some set backs. Unusually wet weather and soil made the construction of the road to the property much more costly than expected. Also, the size of the Bakers' lot could not accommodate the septic system called for in the construction contract necessitating a change order authorized by the Bakers.

On April 16, 1992, the Builder requested the first draw upon the construction loan in an amount totaling approximately $31,000.00. The Bank inspected the construction and reported the project to be 7% complete. The checks were issued, endorsed by one of the Bakers, and distributed to the Builder and the various subcontractors and suppliers.

On May 3, 1992, the Builder requested the second draw in the amount of $44,000.00. The Bank's inspection ultimately reported the project 14% completed at that point. The checks were issued as before, one of the Bakers endorsed them, and they were distributed to the various payees.

The present dispute arose out of the third draw upon the construction loan requested by the Builder. On May 25, 1992, the Builder requested the third draw in the amount of $25,000.60. The Bank's inspector reported the construction to be 51.5% completed at that point. The checks were issued, endorsed by one of the Bakers, and distributed to the Builder and seven other payees. However, the Bakers had become concerned over some perceived discrepancies in the Builder's documentation which caused them to lose confidence in the Builder. The Bakers ordered the Bank to stop payment on all the checks issued under the third draw request. Thus, payment was stopped on 8 checks totaling $25,000.60. The Bakers notified all the payees that they had ordered the Bank to stop payment on the checks.

The Builder responded immediately by removing all the installed windows and doors, including the garage door, from the Bakers' partially completed home. The Builder also collected some lumber and other materials which it returned to the suppliers for credit. The Builder paid the outstanding bills of some of the subcontractors and suppliers who had contributed to the construction of the Bakers' house. The Builder filed a mechanic's lien against the Bakers' property in the amount of $99,500.00.

Litigation was initiated when the Builder sued to foreclose its mechanic's lien. In addition to the amount secured under its lien, the Builder claimed $42,679.48 in damages for the Bakers' breach of the construction contract and requested treble damages, costs, and attorney fees under I.C. 34–4–30–1 for the total amount of the checks that the Bakers had ordered the Bank to stop payment. The Bakers answered and counterclaimed against the Builder for, among other things, breach of the construction contract. The Bakers requested $39,000.00 in damages representing the additional, anticipated cost to complete their home. The Bakers hired another builder who completed the home.

The Bakers filed an additional lawsuit against the Bank which was docketed in the same trial court. This complaint alleged that

ety of filing a 93 page brief containing nearly

unintelligible and mostly irrelevant information.

the Bank had breached certain fiduciary duties in the disbursement of funds under the construction loan. The Bakers requested judgment in the amount of $35,000.00 against the Bank.

Various pleadings were filed and discussions had among the parties regarding the consolidation of the two actions. The trial court ultimately conducted a status conference and, over the objection of the Bakers, ordered that the two lawsuits be consolidated for trial.

The trial court denied the Bakers' request for a jury trial and the entire matter was submitted to a four-day bench trial. The trial court entered judgment as outlined above along with extensive findings of fact. This appeal ensued.

## DECISION

## I.

### *Consolidation/Bench Trial*

### A: Consolidation

 The Bakers assert that the trial court committed reversible error by denying them a jury trial reasoning that, even if they had not been entitled to a jury trial in the first lawsuit which had been initiated as a foreclosure action, they were still entitled to a jury trial in their separate lawsuit brought against the Bank. Thus, the Bakers argue, the trial court erred by consolidating the two actions without providing them a jury trial on the issues involving the Bank.

. Under Ind.Trial Rule 42(A) the trial court may order the consolidation of actions which involve a common question of law or fact. When determining whether actions should be consolidated or tried separately, the trial court balances the interests of convenience and economy against the likelihood of substantial prejudice to the party object-

ing to consolidation. *Fultz v. Cox*, 574 N.E.2d 956, 959 (Ind.App.1991). Consolidation is favored when it serves the interests of judicial economy. *Id.* The trial court is afforded broad discretion in determining whether actions should be consolidated for trial. *Id.*

In the present case, there is no reasonable dispute that the two separate lawsuits shared a common nucleus of facts. The Bakers' concern over the project involved the propriety and documentation of the Builders' requests for disbursements from the Bank and the corresponding propriety of the Bank's disbursements of the loan proceeds and its oversight of the project. As manifested by the voluminous record filed in this case, there was a huge amount of detailed evidence regarding the multitude of transactions involved in the construction project. Judicial economy was well-served by consolidation. Indeed, although they objected to the consolidation order, the Bakers had previously notified the court that the two cases involved "substantially the same issues" and that they intended to move that the cases be consolidated. The trial court abused no discretion in ordering the two actions consolidated for trial, and we find no error.

### B: Bench Trial

 The right to a jury trial is subject to the determination of whether the case involves an equitable or legal cause of action. T.R. 38(A); *Jones v. Marengo State Bank*, 526 N.E.2d 709, 713 (Ind.App.1988). In making the equitable/legal determination, the trial court must deduce the main theory of the case by examining the complaint and pleadings and their general scope and tenor. *Id.* If an essential part of a cause of action is equitable the rest of the case is drawn into equity. *Id.*[2] In *Jones*, we held that an action to foreclose a security interest was essentially equitable and therefore the trial

---

**2.** A jury trial is not required where an essential equitable claim draws legal claims into the case despite the language of T.R. 39(A)(2) which reads:

If a party demands a jury trial on any issue upon which he is entitled to jury trial as of right in the case, the court shall grant it on that issue.

3 W. Harvey, *Indiana Practice* § 39.1 at 125 (1988). Professor Harvey noted that T.R. 39(A)(2) was all but repealed or consumed in the holdings of *Hiatt v. Yergin*, 152 Ind.App. 497, 284 N.E.2d 834 (1972), *overruled in part on other grounds, Clark County State Bank v. Bennett*, 166 Ind.App. 471, 336 N.E.2d 663 (1975), and *Erdman v. White*, 411 N.E.2d 653 (Ind.App.1980), *trans. denied.*

court did not err in denying the motion for a jury trial. *Id.* at 714.

■ The present litigation ensued upon the Builder's complaint to foreclose upon its mechanic's lien, an equitable claim, securing approximately $100,000.00. The Bakers' concerns about the Builder's and Bank's conduct in the construction process and disbursement of loan proceeds centered upon the multitude of transactions subsumed within the various charges and accounts secured by the mechanic's lien. The foreclosure action was an essential part of the litigation and the trial court did not err by denying the Bakers' request for a jury trial. *See id.*

## II.

### *Mechanic's Lien*

■ The Bakers assert that the trial court erred by awarding the Builder $3,261.01 on its claim secured by the mechanic's lien. The Bakers raise 6 separate issues related to individual items or charges listed on the Builder's account. The Bakers raise two more issues arguing that the trial court failed to accord the appropriate weight to the evidence supplied by their witnesses.

■ A motion for specific findings pursuant to Ind.Trial Rule 52 was filed. The purpose of making special findings is to provide the parties and reviewing courts with the theory upon which the judge decided the case so that the right of review might be preserved effectively. *Willett v. Clark,* 542 N.E.2d 1354, 1357 (Ind.App.1989). Special findings, and the judgment which rests upon those findings, will be set aside only if they are clearly erroneous in that the record is devoid of facts or inferences to support the findings or that the judgment is unsupported by the findings. *Matter of C.D.,* 614 N.E.2d 591, 593 (Ind.App.1993), *trans. denied.* In reviewing the trial court's entry of special findings, we neither reweigh the evidence nor reassess the credibility of witnesses. *Flansburg v. Flansburg,* 581 N.E.2d 430, 435 (Ind. App.1991), *trans. denied.* Special findings, even if erroneous, do not warrant reversal if they amount to mere surplusage and add nothing to the trial court's decision. *Dona-*

*van v. Ivy Knoll Apartments Partnership,* 537 N.E.2d 47, 52 (Ind.App.1989).

The Bakers simply want to retry the case on appeal and, in the process, would have us examine a great deal of the voluminous record before us. We are not permitted to perform such a service. The trial court made extensive findings based on the evidence in whittling down the Builder's claim from around $100,000.00 to the $3,261.01 figure. We will not attempt to recalculate the figures or disturb the trial court's determination in this matter.

## III.

### *Award of $50,0000.00 on the Stop Payment Order*

■ We are, however, greatly concerned over the propriety of the trial court's award of approximately $50,000.00 to the Builder based on I.C. 34–4–30–1 for the Bakers' conduct in ordering the Bank to stop payment on the checks disbursed under the third draw of the construction loan. The Builder readily concedes in its brief that it elected the remedy provided under Ind.Code 34–4–30–1 which precludes its recovery under the remedy provided by I.C. 26–2–7–4 for a claim based upon a stop payment order made without valid legal cause. Indiana Code 26–2–7–7 provides that a person must elect between pursuing the remedy provided in the chapter or the remedy provided under I.C. 34–4–30–1. Thus, the Builder's claim, as it readily concedes in its brief, required proof that the Bakers' action in stopping payment of the checks constituted one of the criminal offenses listed in I.C. 34–4–30–1; in particular, either Theft or Conversion as proscribed by I.C. 35–43–4–2 or 3.

■ There can be no reasonable dispute that criminal intent is an essential element which must be proved in both Theft and Conversion. *Wojtowicz v. State,* 545 N.E.2d 562, 564 (Ind.1989) (knowingly or intentionally exercising unauthorized control over property is an element in both Theft and Criminal Conversion.); *Wagerman v. State,* 597 N.E.2d 13, 15 (Ind.App.1992) (Criminal intent is presumed to be an element in all criminal offenses), *trans. denied.*

■ Nowhere in its extensive findings did the trial court find that the Bakers committed a criminal offense in ordering the Bank to stop payment on the checks. Instead, the trial court found:

> Bakers stopped payment on the third draw check in the amount of $25,000.60 without legal justification. Bakers failed to meet their burden of proving a valid, legal cause to stop payment of the third draw check in order to avoid liability.
>
> \* \* \* \* \* \*
>
> The amount of the third draw which the Bakers stopped payment on without justifiable legal cause is hereby doubled and judgment is awarded in favor of [Builder] in the sum of $50,001.20, . . .

The language of the trial court's findings and judgment is the language of the remedy prescribed by I.C. 26-2-7-4, as noted above, and falls far short of à finding that the Bakers had committed Theft or Conversion as required to sustain a judgment under I.C. 34-4-30-1. We conclude without hesitation that the trial court's findings and judgment awarding the $50,000.00 to the Builder under I.C. 34-4-30-1 to be clearly erroneous because there is absolutely no evidence that Bakers' acted with criminal intent when they ordered the Bank to stop payment on the checks.

■ Moreover, the checks in question represented payments for the materials and services that went into the construction of the home—the precise basis of the Builders' claim secured under its mechanic's lien. Thus, an award of compensatory damages based on the claim secured by the mechanic's lien in addition to an award under I.C. 34-4-30-1 for the Bakers' stop payment order on the checks which were to have paid for the precise services and materials secured under the mechanic's lien constitutes an impermissible duplicitous recovery. *See Town of Newburgh v. Pecka*, 609 N.E.2d 1152, 1154 (Ind.App.1993), *trans. denied.*

Accordingly, the trial court's judgment awarding approximately $50,000.00 on the basis of I.C. 34-4-30-1 for the Bakers' conduct in ordering the Bank to stop payment on the checks represented by the third draw is clearly erroneous. Therefore, we reverse and remand with instructions that the trial court vacate this portion of its judgment. Any other theory of recovery or measurement of damages has been waived under the law of the case doctrine. *See Jordan v. Talaga*, 532 N.E.2d 1174, 1188 (Ind.App. 1989), *trans. denied.*

## IV.

### Attorneys Fees

■ The trial court awarded the Builder approximately $10,000.00 in attorneys fees "pursuant to I.C. 34-4-30-1 and the Indiana Mechanic's Lien Statute." We have affirmed the judgment based upon the claim secured by the mechanic's lien and have reversed the judgment based on I.C. 34-4-30-1 under Issues II and III respectively. Therefore, we must reverse and remand with instructions that the trial court enter findings and amend its judgment to reflect an award of attorney fees, if any, based on the Indiana Mechanic's Lien Statute alone. *See R.E.G. v. L.M.G.*, 571 N.E.2d 298, 306 (Ind.App.1991) (Award of attorney fees based partly on a permissible factor and partly on an impermissible factor reversed and remanded for a determination of attorney fees based on permissible factor alone.)

## V.

### Bakers' Claim Against the Bank

■ As noted above, the Bakers requested judgment against the Bank for the breach of fiduciary duties based upon alleged improprieties in the disbursement of the construction loan funds. Without determining whether the Bank owed fiduciary duties to the Bakers, we can readily conclude that the trial court's findings and judgment to the effect that the Bakers failed to demonstrate that the Bank had committed any improprieties in the disbursement of the construction loan proceeds are not clearly erroneous. Therefore, any error or perceived inadequacy in the trial court's findings and judgment is harmless and we find no reversible error. *See Donavan*, 537 N.E.2d at 52.

## CONCLUSION

We reverse and remand with instructions that the trial court vacate its judgment and award of attorney fees based upon I.C. 34–4–30–1 as explained in Issues III and IV above. In all other respects, we affirm.

NAJAM and FRIEDLANDER, JJ., concur.