## MERLE LEE HALL *v.* STATE OF INDIANA

[No. 1-1077A243. Filed April 3, 1978.]

*Mary Ann Gay*, of Bloomington, for appellant.

*Theodore L. Sendak*, Attorney General, *Mark Allen Mertz*, Deputy Attorney General, for appellee.

ROBERTSON, J. — Merle Lee Hall (Hall) brings this appeal from his conviction for rape.

The facts of the case show that on December 3, 1976, Hall was charged with rape. On the day of trial, March 31, 1977, Hall moved for a continuance based on the grounds that newly discovered evidence had been brought to his attention on that day and it needed to be investigated. The motion for continuance was overruled by the court, and the cause proceeded to a trial by jury, whereupon the jury returned a verdict of guilty against Hall.

Hall's counsel had received a letter allegedly written by the victim's father and stepmother to the mother of the victim. This alleged that the victim had previously received psychiatric treatment for compulsion to lie and for sexual problems and that she had previously unjustly accused other men, including her own father, of raping her. Additionally, the letter alleged that the victim had threatened, in the words of her stepmother, to "[T]ell everyone that . . . my dad, one of my brothers-in-law, and my brother had all raped her. She said she would make them believe it too."

It was subsequently learned at trial that this letter was at one time in the possession of the chief investigating officer for the State in this cause. This officer, however, judging the letter unimportant in the case at bar, did not turn it over to the prosecutor. As a result, even though Hall filed a timely Notice for Discovery and Inspection specifically requesting the production of exculpatory evidence, the letter was not included in the State's Answers to Discovery or any of the State's Supplementary Discovery Responses.

When the letter was delivered to Hall's counsel on the day of the trial, he moved for a continuance that he might contact and arrange for witnesses, who had knowledge of the facts mentioned in the letter, to testify at the trial. This motion was denied by the court.

In his motion to correct errors, Hall alleged five separate errors. This opinion shall only address the third alleged error, as our disposition makes needless any consideration of the other alleged errors. The issue of error before this court for review is:

DID THE TRIAL COURT ERR IN DENYING DEFENDANT'S MOTION FOR A CONTINUANCE, FILED MARCH 31, 1977, THE DAY OF TRIAL?

A correct determination of this issue requires our resolution of several preliminary questions:

(1)   Whether any of the evidence contained in the letter in question was admissible under current Indiana law?

(2)   Whether any of the evidence contained in the letter was admissible under the Indiana Rape Shield Law, IC 1971, 35-1-32.5-1? (Burns Code Ed.)

(3)   Whether the evidence contained in the letter was exculpatory, and, if so, was there a duty on the prosecutor to disclose such evidence to Hall?

(4)   Whether Hall's Motion for Continuance was procedurally sound under Indiana Rules of Procedure, Trial Rule 53.4?

(5)   Was the denial of the Motion for Continuance a denial of Hall's rights?

(1)

Indiana law would not allow the actual letter into evidence in this case, as it is hearsay. As stated in *Wells v. State* (1970), 254 Ind. 608, 614, 261 N.E.2d 865, 869, quoting from McCormick, Evidence § 225:

Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.

The *Wells* court, citing to treatise authorities, also said:

The principal reasons for the exclusion of hearsay evidence are that the out-of-court declarant was not under oath, not subject to confrontation by the trier-of-fact, and most importantly, not subject to cross-examination by the accused. *Ibid.*

The information contained in the letter in this case, however, might have assisted the defense by leading to persons who were threatened by the victim and to experts who could perhaps produce testimony of

the victim's mental condition pertaining to her propensity to lie. Such evidence, based on actual personal knowledge of the witnesses, would have been admissible at trial for at least impeachment purposes.

As evidenced in the trial record, the victim expressly denied having threatened to accuse persons of raping her, other than her father. She further testified that her father did indeed rape her. Yet the trial court did not grant a continuance on the basis of the letter, which might have led to the procurement of the victim's father as a witness. He, as well as others, should have been allowed to testify to impeach the victim's testimony.

(2)

Next, it is important to consider whether or not the testimony of any witnesses procured as a result of the letter would have been admissible under Indiana's Rape Shield Statute, IC 1971, 35-1-32.5-1. This statute provides:

In a prosecution for the crime of rape (IC 1971, 35-13-4-3). . . . evidence of the victim's past sexual conduct, opinion evidence of the victim's past sexual conduct, and reputation evidence of the victim's past sexual conduct, may not be admitted, nor may reference be made thereto in the presence of the jury, except as provided in this chapter [35-1-32.5-1 — 35-1-35.5-4].

The statute excludes the admission of opinion, reputation, and specific instance of the victim's past sexual conduct unless the evidence is of past sexual conduct with the defendant or shows that the act upon which the prosecution was founded was committed by someone other than the defendant. The Indiana statute seems to suffer more from underinclusion than from overinclusion, and any testimony other than that dealing with the victim's past sexual conduct should have been allowed. In this case, the essence of evidence suggested by the letter goes directly to the victim's credibility, not her history of sexual conduct. We conclude, therefore, that the witness testimony procured as a result of allegations made in the letter would not have been excluded by Indiana's Rape Shield Statute.

(3)

As to the third consideration, the evidence, or a link to evidence,

in the letter in question, whether exculpatory as to the defendant or not, is surely favorable to the defendant. It was stated in *Brady v. Maryland* (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-1197, that "The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of good faith or bad faith of the prosecution."

In the case at bar, however, the prosecutor never received the letter. But, according to *United States v. Bryant* (D.C. Cir. 1971), 439 F.2d 642, 650, "[T]he duty of disclosure affects not only the prosecutor, but the government as a whole, including the investigative agencies." It was also stated in *Bryant*, that:

Such suppression must be regulated if the disclosure requirement is to be a strong safeguard; if only the prosecutor were under the command of *Brady*, the right to a fair trial would depend on uncertain and uncontrolled decision of government investigators. 439 F.2d at 650.

Therefore, when the investigative forces of the State discovered the letter in question, it should have been turned over to the prosecutor for a determination of its value. In our opinion, the reasonable, seasoned police officer should have determined that a letter referring to an alleged rape victim's psychiatric treatment for a compulsion to lie and her propensities to accuse other men of raping her would be of importance to the prosecution.

*Bryant* also held that the government has the burden to show that it has "promulgated, enforced, and attempted in good faith to follow rigorous and systematic procedures designed to preserve *all* discoverable evidence gather in the course of a criminal investigation." 439 F.2d at 652. (Emphasis in original. Footnote omitted).

The State should have included this letter in its answer to Hall's request for discovery.

(4)

With respect to the procedural question, we conclude that in the case at bar, Hall did follow the procedures set out in Trial Rule 53.4. His

Motion for Continuance included statements pertaining to the materiality of evidence expected to be obtained. The inclusion of the letter in the motion reinforced. Hall's claim of the materiality of the evidence to be obtained. In his motion, Hall indicated relevant portions of the letter to be considered by the court in ruling on the motion. It is said that, "The statements showing diligence and tending to excuse defendant for whatever he failed to do toward finding an absent witness, must exclude all references of a lack of diligence." Ewbank's Indiana Criminal Law, Symmes Ed., Vol. 1, ch. 15, § 289.[1]

In his quest for evidence, Hall filed a Notice for Discovery and Inspection specifically requesting production of exculpatory evidence. Furthermore, the letter in question was in the hands of the victim's mother. The victim did not live with her mother and apparently was not on good terms with her, nor did the mother find out about the rape from her daughter. In no way was the mother connected even tangentially with the rape, and so there was no reason for the defense to interrogate her. The discovery of the letter, therefore, was not due to lack of diligence. When these facts are coupled with the State's procuration of the evidence from the victim's mother and the State's failure to divulge it under the Hall's Motion for Discovery and Inspection, it is made plain that the State violated its duty to preserve and disclose to Hall any exculpatory evidence it discovered during the course of its investigation. That Hall did not specifically name witnesses to be called is unimportant; he possessed the letter, knew who it was from, to whom it was delivered, and therefore could be expected to direct his discovery toward those parties. Names and addresses of possible witnesses were included in the letter or on the letter's return address, and thus, in the motion for continuance before the trial court, as the letter was included in the Motion for Continuance. It cannot be claimed, then, that the trial court did not know who Hall intended to call, what testimony he intended to elicit, and where he intended to seek the evidence.

Another procedural consideration involves Hall's failure to file his Motion for Continuance five days prior to the trial as required by Trial

---

1. *See Tait* v. *State* (1963), 244 Ind. 35, 47, 188 N.E.2d 537, 544.

Rule 53.4. The Rule provides for a continuance "upon a showing of good cause." That Hall did have good cause is demonstrated in our discussion of the next and final point.

### (5)

The right to counsel is fundamental to the American system of justice. This necessarily embodies the corollary right to effective counsel. To be effective, counsel must be given sufficient opportunity to adequately prepare his case. *Hartman v. State* (1973), 155 Ind. App. 199, 292 N.E.2d 293. However, granting continuances in order to allow more time for preparation is generally not favored in criminal cases without a showing of good cause and will only be granted in the furtherance of justice. *Carlin v. State* (1970), 254 Ind. 332, 259 N.E.2d 870. Whether a good cause has been shown rests within the sound discretion of the trial judge and will only be disturbed if there is a clear showing of an abuse of discretion. *Miller v. State* (1971), 256 Ind. 296, 268 N.E.2d 299; *Blume v. State* (1963), 244 Ind. 121, 189 N.E.2d 568. In order to demonstrate an abuse of discretion, the record must reveal that the defendant is prejudiced by the failure to grant the continuance. *King v. State* (1973), 260 Ind. 422, 296 N.E.2d 113.

It seems unquestionable in the case at bar that Hall was prejudiced by the trial court's failure to grant him a continuance. In the case at bar, as distinguished from cases like *Tait*, and *Blume*, wherein the defendant or his attorney knew or had reason to know of potential witnesses and simply failed to make an effort to depose or subpoena them, neither Hall nor his counsel had any reason to suspect the existence of the evidence in question. Significant allegations and statements in the letter invovled in this case necessitated that Hall depose or subpoena witnesses having personal knowledge of the victim's propensities to lie and to threaten to accuse others of rape. Such testimony would have gone directly to the victim's credibility as a witness, and, therefore, would have allowed the trier of fact to make a more informed decision as to Hall's guilt or innocence.

As was stated in *United States v. Agurs* (1976), 427 U.S. 97, 112-113, 96 S.Ct. 2392, 2401-2402:

The proper standard of materiality must reflect our overriding

concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt. (footnotes omitted).

The defendant here was denied an opportunity to pursue evidence which creates a reasonable doubt as to his guilt in light of the record of the trial court. For this reason, the verdict should be reversed and the case remanded for a new trial.

Reversed and remanded.

Lowdermilk and Lybrook, JJ., concur.

NOTE—Reported at 374 N.E.2d 62.