**Jim McKIM, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 184S42.**

Supreme Court of Indiana.

April 19, 1985.

Gerald R. Thom, Thom & DeMotte, Jasper, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Jim McKim was found guilty by a jury in the Dubois Circuit Court of incest, rape, and child molesting. The trial judge subsequently sentenced Defendant to three years imprisonment for his conviction of incest, forty years imprisonment for his conviction of rape, and forty years imprisonment for his conviction of child molesting, all terms to be served concurrently. Four issues are presented for our consideration in this direct appeal as follows:

1. admission of testimony of witness Karen Wigand regarding her sexual encounters with Defendant, including letters received by her from Defendant;

2. refusal of the trial court to allow Defendant to question witnesses, including the victim, regarding specific acts of misconduct by the victim and her use of drugs;

3. refusal of the trial court to permit Jason McCune to testify regarding his lack of sexual relations with the victim; and

4. refusal of the trial court to admit evidence regarding prior inconsistent statements made by the victim regarding her use of drugs and alcohol.

Defendant was charged with having sexual relations with his fourteen year old daughter, J.M., who began to reside with him in September, 1982. At that time, Defendant had had a relationship with Karen Wigand for about two years and, according to Wigand's testimony, that relationship began to fall apart because of Defendant's violent nature, the physical abuse he inflicted upon her, and the forced sexual intercourse to which he subjected her against her will. It was the State's conten-

tion, supported by the evidence, that Defendant was so obsessed with Karen Wigand that the breaking off of their relationship caused him to be overly affectionate with his daughter. He would hug her in a not-so-fatherly manner and would keep her out with him on school nights by driving her around until after midnight and sometimes until 2:00 a.m. Defendant first forced J.M. to have sexual relations with him on November 24, 1982, while they were parked on a back road and after he pulled out a knife and threatened to put her down a deep well if she refused. Afterwards, he had her call Karen Wigand to wish her a "Happy Thanksgiving" from Defendant. On another occasion after having had sexual intercourse with J.M., Defendant forced J.M. to put a lighted flare in the trunk of Wigand's automobile.

## I

■ Karen Wigand was permitted to testify, over Defendant's objections, to the beatings and forced sexual intercourse inflicted upon her by Defendant. It was the State's contention and the trial court's ruling that this testimony was relevant to show Defendant's state of mind and depraved sexual instinct. This Court has held:

"The general rule in Indiana for the admission of evidence of separate, independent, and distinct crimes to establish guilt of an accused is that such evidence is inadmissible except where relevant to show intent, motive, purpose, identification, and common scheme or plan. [citation omitted]. However, this Court has carved an exception for those acts involving or showing a 'depraved sexual instinct.' [citation omitted]. The basis for this exception is that in prosecutions for depraved acts ' * * * the prosecuting witness is not likely to be believed, since the evidence' standing alone and entirely unconnected with anything which led to or brought it about, would appear * * * unnatural or improbable in itself." [citations omitted]. Thus, the evidence lends credence to the testimony of the prosecu-

tion that might otherwise be disbelieved. [citation omitted]."

*Grey v. State*, (1980) 273 Ind. 439, 445, 404 N.E.2d 1348, 1352. This Rule was followed by the Court of Appeals in *Fox v. State*, (1980) Ind.App., 413 N.E.2d 665, and *Omans v. State*, (1980) Ind.App., 412 N.E.2d 305, *trans. denied.*

The violent, forced sexual intercourse Defendant had with Karen Wigand was similar to the offenses he committed against his daughter and here apparently was a relationship between the two as Defendant seemed to take out the frustration he felt over his relationship with Wigand on his daughter, forcing sexual intercourse with his daughter and then ordering her to make contacts with Wigand in his behalf. The testimony of the violence inflicted upon Wigand by Defendant was relevant to show his intent and his depraved sexual instincts. It also was relevant to describe the entire story and events leading up to and including the offenses committed against his daughter.

■ Defendant further objected to the admission of certain letters Wigand had received from him. The letters generally expressed Defendant's love for Wigand and his attempts to be reconciled with her. He also tended to apologize for his treatment of her and promised that it would cease if their relationship could be reestablished. The State offered these exhibits to corroborate Wigand's testimony and to further explain or illustrate the relevancy of her testimony. Although the letters were of questionable probative value, they were not prejudicial to the defendant since they were merely cumulative of Wigand's testimony. Moreover, they were not decisive of guilt since they contained no references or admissions to the crimes with which Defendant stood charged. The letters therefore failed to materially prejudice Defendant and were, at most, harmless. *Mitchell v. State*, (1972) 259 Ind. 418, 287 N.E.2d 860. We find no error on this issue.

## II

■ Defendant attempted to introduce evidence which generally showed the victim's heavy use of alcohol and drugs and

further attempted to question the victim regarding her use of drugs and alcohol. The evidence clearly indicated that the victim had a history of behavior problems and she did not deny that she used alcohol and other drugs from time to time. The trial court, however, limited Defendant's inquiry in this area to the victim's general reputation in the community for truth and veracity and did not allow Defendant to inquire about specific acts of immorality by the victim for purposes of impeaching her. The trial court also limited Defendant's inquiry into the evidence of her drug and alcohol use on the dates of the charged offenses and on the day of trial. The trial court acted properly in both of these instances. It is a well-established rule that a witness cannot be impeached by specific acts of misconduct which have not resulted in criminal convictions. Impeachment must be done, if at all, by proving the witness' general reputation in the community for being dishonest. *Randall v. State,* (1983) Ind., 455 N.E.2d 916; *Davidson v. State,* (1982) Ind., 442 N.E.2d 1076; *Turpin v. State,* (1982) Ind., 435 N.E.2d 1. The trial court properly followed this procedure. The same is true regarding use of drugs and alcohol by the victim. The extent of the victim's use of drugs and alcohol would be pertinent only to her ability to recall the events on the dates in question had she been using drugs or alcohol at that time, or if she were on drugs at trial or if her drug and alcohol abuse was so extensive that her mind was impaired. *Boles v. State,* (1973) 259 Ind. 661, 291 N.E.2d 357; *Lusher v. State,* (1979) 181 Ind.App. 63, 390 N.E.2d 702, *reh. denied.* The victim here admitted that she consumed alcohol on occasion and testified that she had consumed two beers on November 24, one date on which she was raped by her father. She described the effect those two beers had on her. There was no showing that the victim's drug or alcohol consumption was of such a great degree that it substantially affected her ability to perceive, remember, or testify. In fact, the victim testified in detail about the events of November 24, including her phone call to Karen Wigand to give her a message from Defendant

which was substantiated by Wigand. The trial court properly limited the area of Defendant's inquiry into the victim's alleged misconduct, her reputation for honesty and her drug and alcohol use.

### III

■ Defendant also attempted to present the testimony of Jason McCune. The avowed purpose of McCune's testimony was to support Defendant's subsequent testimony that the victim had told him, the defendant, that she had had sexual relations with McCune. McCune apparently would have testified that he never had sexual intercourse with the victim. It is Defendant's contention that this would show the victim's propensity to falsely accuse others with having sex with her. He relies upon the following cases for this contention: *Little v. State,* (1980) Ind.App., 413 N.E.2d 639, and *Hall v. State,* (1978) 176 Ind.App. 59, 374 N.E.2d 62, *reh. denied.* In *Hall,* the rape victim falsely told her parents that certain individuals had committed sexual misconduct against her and in *Little,* the victim communicated to the police that others had sexually violated her. In both cases, the victims later recanted these accusations. In the instant case, it is the defendant himself who claims that the victim told him that she had had relations with Jason McCune, a 12 year-old friend. There is no other evidence that the victim ever made such a statement to anyone and, therefore, no testimony that she now recants any such statement. Defendant's version of the episode therefore is self-serving. Furthermore, it appeared that though no sexual intercourse occurred between McCune and the victim, there was some indication that they "played around" and the court excluded such evidence pursuant to the rape shield law, Ind. Code § 35-37-4-4 (Burns Supp.1984) [effective September 1, 1982], since it touched upon the victim's promiscuous background. The trial court properly excluded this evidence.

### IV

■ Finally, Defendant attempted to show, by way of medical reports, that the victim had from time to time made incon-

sistent statements regarding the extent of her alcohol and drug use. The statements, however, did not refer to the incidents in question in the instant case. Defendant's avowed purpose for offering this evidence was to attack the victim's credibility by showing that she had made inconsistent statements on a given subject on prior occasions. The statements appeared in medical reports which were not in evidence in this cause and which referred to times and events not necessarily connected to the times and events involving the charges against Defendant. The trial court found that the challenged evidence would constitute hearsay and was evidence of extraneous matters irrelevant to the issues at trial. It furthermore would be nothing more than attempts to discredit the victim by specific acts of misconduct or immoral behavior, again irrelevant to the issues being tried. *Randall, supra.* We find no error.

The trial court is in all things affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.