**Allen MORRISON, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 03A04–8811–CR–390.

Court of Appeals of Indiana, Fourth District.

Aug. 17, 1989.

Stephen W. Dillon, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

CHEZEM, Presiding Judge.

## Case Summary

Defendant–Appellant, Morrison, appeals his conviction after trial by jury on eight counts of Child Molesting, a Class B felony, and one count of Child Molesting, a Class C felony. We affirm.

## Issues

I. Whether Defendant was denied the right to a speedy trial pursuant to Indiana Rules of Criminal Procedure, Rule 4(C).

II. Whether the trial court order creating a panel of prospective special judges violated Indiana Rules of Trial Procedure, Rule 79(7), and whether Defendant subsequently acquiesced to the jurisdiction of the trial court.

III. Whether Defendant was denied a fair trial by the failure of the Bartholomew County Prosecutor's to turn over to Defendant, or reveal the existence of, polygraph examinations of the victims.

IV. Whether Defendant was denied effective assistance at trial by counsel's failure to properly investigate and counsel's failure to call two witnesses.

V. Whether the trial court erroneously denied Defendant's supplemental Motion to Correct Error, which was based upon the newly discovered evidence of an alleged admission by one of the victims that her story had been fabricated.

## Facts

On April 25, 1986, Defendant–Appellant Morrison was charged with eight counts of Child Molesting, a Class B felony, and one count of Child Molesting, a Class C felony. On June 10, 1986, the State filed a motion requesting a trial date. On June 23, 1986, the trial court set this matter for trial by jury as a third setting on November 18, 1986, as a second setting on February 10, 1987, and as a first setting on April 6, 1987. The dates of all three settings passed without objection; the case was not tried on any of those dates.

On January 15, 1987, the newly elected Bartholomew Circuit Court Judge, the Honorable Suzanne Forster Trautman, disqualified herself and certified the matter to the Supreme Court, pursuant to Indiana Rules of Trial Procedure Rule 79, for appointment of a special judge. On February 20, 1987, the Supreme Court appointed the Honorable James W. Long as special judge. Judge Long assumed jurisdiction of the case on March 2, 1987.

On March 6, 1987, the State filed a second motion to set the matter for trial. The trial court set the matter for trial on June 9, 1987. Defendant did not object to this trial setting. Due to congestion of the special judge's calendar, on May 28, 1987, Judge Long sua sponte drew up a panel of three judges and directed the parties to strike by June 4, 1987, to select a new judge.

On June 4, 1987, the State struck; the Defendant did not. On July 27, 1987, the State filed a motion to compel Defendant's counsel to strike from the panel. The motion apparently was not ruled upon and Defendant struck on July 30, 1987. On

July 31, 1987, the trial court entered an order, naming the Honorable Charles D. O'Connor as special judge.

On September 3, 1987, the trial court entered an order which noted Judge O'Connor had declined the appointment, and another panel of judges was created. The State struck from the panel on September 10, 1987. On the same date, the State filed a second motion to compel Defendant to strike. Defendant struck from the panel on October 1, 1987. On October 2, 1987, the trial court entered an order naming the Honorable Frank Guthrie as special judge. On October 7, 1987, Judge Guthrie assumed jurisdiction.

On October 14, 1987, the State filed a third motion requesting that the matter be set for trial. The trial court set this cause for trial by jury on February 15, 1988. Defendant filed a motion for discharge pursuant to Criminal Rule 4(C) on January 14, 1988. A hearing on the motion was held on February 5, 1988. The motion was taken under advisement, and on February 8, 1988, the motion was denied.

Defendant was tried by jury on February 15, 1988 and was found guilty on all counts. On April 18, 1988, the trial court sentenced Morrison to eight (8) ten (10) year sentences for the eight Class B felony Child Molesting counts and one (1) five (5) year sentence for the Class C felony Child Molesting count. Counts III, IV and VII (Child Molesting as a Class B felony) were to run consecutively with all others to run concurrently for a total of twenty-five (25) years.

## Discussion and Decision

### I

Defendant argues that he was denied the right to a speedy trial guaranteed to him by Criminal Rule 4(C). Six hundred sixty-one (661) days passed between the date the charges were filed and the date Defendant was actually tried. Defendant asserts that none of the delays were attributable to him; therefore, he should be discharged. Indiana Rules of Criminal Procedure Rule 4(C), at the time charges were filed against Defendant, read as follows:

**(C) Defendant Discharged.** No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule. Any defendant so held shall, on motion, be discharged.[1]

The State argues that although six hundred sixty-one (661) days had passed, only three hundred fourteen (314) days were attributable to the State; the rest were attributable to Defendant or "calendar congestion" and, thus, Defendant was not entitled to discharge under Criminal Rule 4(C).

First, the State argues that Defendant should be charged with the time between the date originally scheduled for the omnibus hearing and the date on which it was actually heard, since the delay was caused by Defendant's motion to continue the hearing. Defendant argues that the delay of the omnibus hearing does not constitute a delay of Defendant's *trial.* The delay in the omnibus hearing resulted in a delay in the proceedings as a whole and, more specifically, a delay in a trial being set. The trial date and other pretrial matters, were set at the omnibus hearing. Trial courts operate on a calendar. Simple logic dictates that the earlier one schedules a trial, the earlier the trial will be held.

---

**1.** This rule was amended effective January 1, 1987. The amendment added the following language:

Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or an emergency shall be reduced to an order, which order shall also set the cause for trial within a reasonable time.

We agree with the State's contention that this thirty-nine (39) day period was chargeable to Defendant. Thus, the number of days is reduced to six hundred twenty-two (622).

■ Second, the State argues it should not be charged the period of time between January 15, 1987, the date Judge Trautman disqualified herself, and March 2, 1987, the date Judge Long qualified as special judge in this cause. State reasons that the thirty-six (36) days between the time Judge Trautman disqualified herself and the appointment of Judge Long by the Supreme Court was not an unreasonable length of time; also, the State lacks any way to force the Supreme Court to act more expeditiously. The period between the appointment and the assumption of jurisdiction by Judge Long was ten (10) calendar days, of which six were business days, after the appointment. The State reasons that this period of time was not an unreasonable one for notice to the judge of the appointment, for the judge to contemplate whether there was any reason that would prevent his acceptance, and for the necessary paperwork to be prepared to accept the appointment.

We agree with the State that this period of time is not unreasonable. The State's argument, that it should not be charged with the time as a result, is persuasive. However, the State supplies us with no authority which demonstrates that "reasonableness" may override the provisions of Criminal Rule 4(C). The rule provides only two (2) occurrences which toll its operation: 1) defendant's delay, by his motion to continue or other actions which cause delay; or 2) congestion of the trial court's calendar.

We note the case of *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. denied* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105[2], in which our state supreme court determined that exigent circumstances may warrant a reasonable delay beyond the limitations established in the rule. In that case, the court held that unavailability of essential personnel tolls the operation of the rule. Here, a judge was "unavailable" since none had assumed jurisdiction after the disqualification of Judge Trautman. Having already determined that the time was reasonable, we hold that *Loyd* applies here and the forty-six (46) days between the disqualification, and the assumption of jurisdiction by Judge Long was attributable to lack of essential court personnel. Thus, Criminal Rule 4(C) was tolled for forty-six (46) days and the number of days is reduced to five hundred seventy-six (576) days.

■ Third, the State argues that the period of time after May 28, 1987 should not be attributable to the State, since on that date Judge Long found that the court calendar was congested. We disagree. While calendar congestion is an occurrence which will toll the application of Criminal Rule 4(C), the remedy is a continuance. The amended rule further provides that the trial date be continued to within a reasonable time. Indiana Rules of Criminal Procedure Rule 4(C). Here, the trial court neither set a new trial date nor created a mechanism which would insure Defendant was tried within a reasonable time. While that portion of Rule 4(C) was not in effect at the time Defendant was charged, the amendment was in effect at the time the order was issued. *See* n. 1, *supra.* Accordingly, it should be applied in this case. Thus, the number of days remains at five hundred seventy-six (576).

■ However, Defendant does not provide us with an explanation of the State's failure to bring Defendant to trial on November 18, 1986. The record is completely devoid of any continuance by the court or the parties; the record also shows no objections by Defendant to the failure of the State to bring Defendant to trial on that date. The party instituting an appeal has the burden of supplying us with an adequate record. The failure to provide an adequate record constitutes a waiver. *Richey v. State* (1981), Ind., 426 N.E.2d 389; *Smith v. State* (1986), Ind.App., 497 N.E.2d 601; *Kerkof v. Dependable Deliv-*

---

**2.** The State cites to *Loyd* in their brief, but not for the proposition stated above.

*ery, Inc.* (1975), 167 Ind.App. 248, 338 N.E.2d 513. In absence of an adequate record, we will presume that Defendant either consented to a continuance of the November 18 trial date or waived any objection to not being tried on that date. Thus, the period between November 18, 1986 and February 10, 1987—eighty-four (84) days—is chargeable to Defendant. Accordingly, the number of days stands at four hundred ninety-two (492).

There is nothing in the record to indicate that either the February 10 or the April 6 trial settings were vacated or continued; again, we must presume that those dates passed without objection or were continued with the consent or at the behest of Defendant. *See Richey, supra.* On March 6, 1987, the State filed a second request for a trial setting. Defendant did not object, and he did not assert that the matter was already set for trial on April 6, 1987. Accordingly, the period from February 10, 1987 to June 9, 1987—one hundred nineteen (119) days—was chargeable to Defendant. Thus, the number of days stands at three hundred seventy-three (373).

Fourth, the State argues that Defendant's failure to object to the June 9, 1987 trial setting constituted a waiver. However, as noted above, two hundred eighty-eight (288) days are not attributable to the State; therefore the State had until February 8, 1988 to bring Defendant to trial. Defendant had nothing to object to at that point and, consequently, waived nothing.[3]

■ Defendant argues the seventy-two (72) days between the striking deadlines established by Judge Long and the dates that Defendant actually complied with those orders should be attributable to the State, since the State had a duty to file a motion to compel earlier than it did or employ the clerk strike remedy found in Criminal Rule 13. We disagree. This delay was directly attributable to the acts of Defendant and, thus, the seventy-two (72) days are attributable to him. The number

of days now stands at three hundred one (301).

■ Finally, the State argues that the thirty-four (34) days between the time Judge O'Connor was appointed and Judge Guthrie was appointed was "part and parcel of the procedure to appoint a special judge to remedy calendar congestion, and therefore, they too should not count against the State." As stated above the procedure applied here to relieve calendar congestion did not toll the application of Criminal Rule 4(C); however, no judge was available to try the case. The lack of essential court personnel makes *Loyd* applicable here. For the purposes of Criminal Rule 4(C), the number of days chargeable against the State is two hundred sixty-seven (267) days. This number is well in within the one year limitation.

## II

■ We take notice that the trial court order of May 28, 1987, establishing a panel of prospective special judges and directing the parties to strike was in violation of Indiana Rules of Trial Procedure Rule 79(7), which provides as follows:

> (7) *In the event a special judge who has assumed jurisdiction of a cause ceases to act as special judge,* other than by reason of the filing of a motion for change of judge, or a judge appointed by the Supreme Court does not qualify within twenty (20) days of appointment, the current regular judge of the court may assume jurisdiction if such regular judge was not the person from whom the initial change of judge was taken and such regular judge is otherwise qualified to serve. On those instances where the regular judge does not assume jurisdiction under this provision, *the cause shall be certified to the Supreme Court for the appointment of another special judge* (emphasis added).

Here, Judge Long ceased to act as special judge because of a congested court

---

**3.** If the two hundred eighty-eight (288) days were attributable to the State, as Defendant argues, then Defendant would have waived the right to a trial prior to June 9, 1987. However, the waiver still would have entitled Defendant to be tried by June 9, 1987. *See State ex rel. Henson v. Washington Circuit Court* (1987), Ind., 514 N.E.2d 838.

calendar and not by reason of a motion for change of judge. Also, Judge Trautman, having previously disqualified herself, was not qualified to reassume jurisdiction. Thus, Judge Long was required by the rule to certify the cause to the Supreme Court for appointment of a new special judge. The procedure employed by Judge Long was improper and did not confer jurisdiction to Judge Guthrie.

We must now consider whether Defendant acquiesced to Judge Guthrie's jurisdiction. We conclude that he has. At no point in the proceeding did Defendant object to Judge Long's recusal; neither did he object to the procedure employed to appoint a new judge. While the lack of subject matter jurisdiction will render any judgment made by that court void, an objection to a lack of personal jurisdiction of a court over a particular defendant may be waived. *Green v. State* (1952), 230 Ind. 400, 103 N.E.2d 429, *cert. denied*, 343 U.S. 987, 72 S.Ct. 1084, 96 L.Ed. 1374. An objection to a lack of personal jurisdiction must be made in a timely manner or the objection is waived. *Moore v. State* (1923), 196 Ind. 299, 141 N.E. 638. Likewise, an objection to the authority of a special judge must be made in a timely manner. When no objection has been timely raised in the proceeding, any objection to the special judge's authority is deemed waived. *Pruitt v. State* (1978), 269 Ind. 559, 382 N.E.2d 150. Accordingly, Defendant has waived any objection to Judge Guthrie's authority and has acquiesced to his jurisdiction over the case.

### III

Defendant argues that he was denied a fair trial by the failure of the Bartholomew County Prosecutor's office to comply with the discovery order of the court; he contends the prosecutor violated the order by failing to turn over to Defendant, or revealing the existence of, polygraph examinations of the prosecuting witnesses which were undertaken by the State.

The State counters that Defendant was not prejudiced since the examinations were not admissible as evidence, nor were the examinations exculpatory. Defendant reasons that even though the examinations would not have been admissible, the statements made by the prosecuting witnesses could have been used as prior inconsistent statements; also, the examinations, while perhaps not admissible, were discoverable since the examinations could be reasonably calculated to have led to admissible evidence.

Defendant is correct in arguing that the polygraph examinations were discoverable. However, Defendant has failed to demonstrate subsequent prejudice which would have resulted in the lack of a fair trial. The examinations, absent a stipulation of the parties prior to the examinations, or any reference to them is strictly inadmissible at trial. *Hicks v. State* (1987), Ind., 510 N.E.2d 676. Defendant also fails to persuade us that access to the examinations prior to trial would have, in this case, led to the discovery of other admissible evidence which would have been exculpatory in nature. Accordingly, we hold that Defendant was not prejudiced by the prosecutor's failure.

### IV

Fourth, Defendant argues that he was deprived of effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States; Defendant argues that counsel failed to adequately investigate the potential exculpatory testimony of two witnesses, one of which was on the witness list, but was never called. In order to prevail on a claim of ineffective assistance of counsel, a defendant must establish two elements. First, Defendant must prove counsel's performance was deficient as measured by prevailing professional norms. Second, Defendant must prove that he was prejudiced by counsel's deficient performance. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Lawrence v. State* (1984), Ind., 464 N.E.2d 1291.

### A. Testimony of Dr. Kim

 Defendant claims that counsel had been informed that one of the victims had been examined by a Dr. C.B. Kim; allegedly, at some point during the examination, Dr. Kim refused to proceed any further based on his assertion that the victim "was still a virgin." The alleged examination occurred when the victim was nine (9) or ten (10) years old, which would have been subsequent to the acts of molestation which are at issue in this cause. Dr. Kim was not called to testify at Defendant's trial. Defendant claims professional norms would have required counsel to seek out Dr. Kim and call him as a witness and that counsel's failure deprived Defendant of exculpatory evidence at trial.

Defendant concedes that, normally, testimony regarding past sexual acts of a victim are inadmissible at trial by virtue of I.C. 35–37–4–4, which is also known as the "rape shield statute." That statute precludes admission of evidence of the victim's past sexual conduct, opinion · evidence of the victim's—or a witness'—past sexual conduct, or reputation evidence of the victim's past sexual conduct. I.C. 35–37–4–4(a). However, Defendant alleges that Dr. Kim's testimony would have fit within the narrow exception to the statutory preclusion of evidence of a victim's past sexual conduct which was set forth by this court in *Hall v. State* (1978), 176 Ind.App. 59, 374 N.E.2d 62. In that case, the victim's father had written a letter, which described past incidents of his daughter bringing unfounded accusations of rape against other men. The defendant sought admission of the letter into evidence at trial. The trial court refused admission. This court reversed, holding that the document in question focused not on the victim's past sexual conduct, but upon her credibility and, therefore, should have been admitted. *Hall, supra.*

This court further defined the *Hall* exception in *Little v. State* (1980), Ind.App., 413 N.E.2d 639. In *Little*, the court required that the past accusations be demonstrably false or have been admitted to be false by the victim or the witness before the victim or the witness may be impeached. *Little, supra.* That definition was adopted by our state supreme court in *Stewart v. State* (1988), Ind., 531 N.E.2d 1146.

Here, the rule of *Hall, Little* and *Stewart* has no application. The focus of proposed testimony of Dr. Kim would be the past sexual activity of the victim and not the credibility of the victim. Certainly, the testimony of Dr. Kim would affect the credibility of the victim as perceived by the jury, but the focus is on whether or not she had sex previous to the examination; the inquiry is not whether or not the victim has lied in the past about such matters, which is the required inquiry in order for the exception to apply. Accordingly, the exception does not apply in this case and Defendant has failed to demonstrate that counsel's performance was outside the parameters ,of accepted professional norms.

Furthermore, the manner in which the proposed testimony is raised is suspect. Defendant asserts the existence of this testimony by way of an affidavit of his wife, and not by an affidavit of Dr. Kim. The existence of this proposed testimony has not been established by the affidavit, nor does Defendant demonstrate how counsel could have produced this testimony at trial. Thus, Defendant has not shown prejudice.

### B. Testimony of Kent Burton

 Defendant next claims that counsel was ineffective for failing to call Kent Burton to testify on Defendant's behalf at trial. Mr. Burton was on Defendant's witness list, but was not called to testify at trial. An affidavit of Kent Burton was filed in support of Defendant's motion; the affidavit stated that he was the first person to have sex with one of the victims when she was fourteen, which was well after the alleged molestations.

Besides the obvious difficulty of ascertaining the source of Mr. Burton's knowledge or his expertise in discerning virginity, his testimony clearly regards the past sexual conduct of the victim, which, as discussed above, is barred by the rape shield statute.

Accordingly, Defendant has not sustained his burden in proving ineffectiveness of counsel.

## V

Finally, Defendant argues the trial court erred by denying Defendant's Supplemental Motion to Correct Error which was based upon newly discovered evidence; Defendant alleges that one of the victims admitted her testimony was fabricated. In support of his motion, Defendant filed an affidavit of a law clerk who worked in Defendant's appellate counsel's office. The affidavit alleged the law clerk received a phone call from a friend of one of the victims. The caller told the clerk that the victim told her the victim's testimony had been fabricated. The caller's mother allegedly prevented the law clerk from further investigating the claim by refusing to allow the caller to get involved.

The decision of whether to grant a new trial on the ground of newly discovered evidence is within the discretion of the trial court. We will reverse only if we determine the trial court could not reasonably have concluded that a different result was not probable. *Kimmel v. State* (1981), 275 Ind. 575, 418 N.E.2d 1152, *cert. denied* 454 U.S. 932, 102 S.Ct. 430, 70 L.Ed.2d 239.

Relief based upon newly discovered evidence is available in Indiana Rules of Trial Procedure Rule 59(A)(6). In order to obtain such relief a defendant must establish the following: (1) the evidence was discovered since the trial; (2) the evidence is material and relevant; (3) the evidence is not cumulative; (4) the evidence is not merely impeaching; (5) the evidence is not privileged or incompetent; (6) due diligence was used in investigating for such evidence before trial; (7) the evidence is worthy of credit; (8) the evidence can be produced upon a retrial of the case; (9) the evidence will probably produce a different result. *Wilson v. State* (1987), Ind., 511 N.E.2d 1014.

The State concedes requirements 1, 2, 5 and 6 are met by the proposed evidence. However, the State contends the proposed evidence is cumulative, merely impeaching, not worthy of credit, could not be produced at trial and would not produce a different result at trial.

We need not discuss all five (5) of the other disputed elements, since we affirm on the basis of number seven (7): whether the evidence is worthy of credit. Here, the affidavit is specious proof, at best, of the alleged admission by one of the victims. The proposed evidence is hearsay. No showing has been made that the person making the call to the clerk was either knowledgeable or credible. Therefore, we conclude that the evidence was not worthy of credit and unlikely to produce a different result.

Accordingly, for all of the above reasons, we affirm the judgment of the trial court.

CONOVER and ROBERTSON, JJ., concurring.