John WESLEY, Jr., Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 27A04–0012–PC–531.

Court of Appeals of Indiana.

July 31, 2001.

Rehearing Denied October 15, 2001.

Susan K. Carpenter, Public Defender of Indiana, Amy E. Karozos, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Joseph A. Samreta, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

John Wesley, Jr., appeals the denial of his petition for post-conviction relief raising one issue, which we restate as: Whether Wesley was denied the effective assistance of counsel by trial counsel's failure to obtain and use psychiatric records showing a history of delusional episodes of the victim, who was the sole eyewitness to his alleged crimes. We reverse and remand for new trial.

## Facts and Procedural History

In April of 1991, Wesley was sharing a one-room apartment with his girlfriend, Virginia Isom. On the afternoon of April 9, neighbors heard fighting and called the police. When police arrived, they found that Isom had locked herself in a communal bathroom and was bleeding from a cut on her head. Isom told police that Wesley had beaten her and had placed the barrel of his sawed-off shotgun in her vagina. When she was later interviewed at the hospital, she repeated these allegations. Wesley was arrested and charged with criminal confinement, battery with a deadly weapon, criminal deviate conduct, intimidation, and resisting law enforcement.

The case proceeded to trial by jury two months later. On the morning of trial, the State dismissed the criminal deviate conduct count based on Isom's recantation, a week earlier, of the allegation that Wesley had stuck the shotgun in her vagina. Isom then testified at trial that Wesley returned home around 3:30 p.m. and appeared to be under the influence of crack cocaine. He asked her to take him to the bed and fix him a plate of food, which she did. Then, according to Isom, Wesley smacked the plate out of her hands and started kicking and pushing her. She tried to leave the room, but he would not allow her and hit her with a lamp. He told her that his "biggest fantasy" was to kill her and reached under the bed for his gun. R. at 178–79. He then beat her with the gun and threatened to "ram" it up her and "blow [her] away that way." R. at 181. When Wesley heard noise outside the door, he stopped the beating and allowed Isom to go to the bathroom, where she remained until the police arrived.

Wesley offered a different version of events when he testified at trial. Accord-

ing to Wesley, when he arrived home Isom accused him of having an affair with another woman. Wesley denied the allegation and said he was going to the store. While he was retrieving money from under the bed, Isom approached him with a "knife" or "other object" in her hand. R. at 366. Wesley grabbed her by the wrists, told her to sit down, and explained that he had not cheated on her. When he rose to leave, Isom punched him and he fell backward, knocking the lamp down. A struggle ensued on the bed, during which Isom hit her head on the nightstand and the butt of the gun, which was positioned between the nightstand and bed. Isom then grabbed the gun, and a struggle ensued as Wesley attempted to "jerk[ ]" it from her. R. at 373. After Wesley secured the gun, Isom struck him and ran out of the room.

Wesley was convicted of all counts and sentenced to an aggregate term of twenty years imprisonment. His convictions were affirmed on direct appeal in a memorandum decision.

On February 2, 1995, Wesley filed a pro se successive petition for post-conviction relief.[1] The State Public Defender entered her appearance and later filed an amended petition on June 12, 2000. The sole issue raised was ineffective assistance of counsel. On August 25, the trial court held an evidentiary hearing on the petition. At the hearing Wesley submitted 277 pages of Isom's certified psychiatric records that showed a history of delusions and false reports of injury. He also presented the testimony of trial counsel, who had not obtained any psychiatric records of Isom before trial, and himself, who had told trial counsel that Isom has a psychiatric history.

The trial court entered findings and conclusions denying the amended petition for

1. Permission to file a successive petition was granted by this Court on January 26, 1995.

post-conviction relief in an October 13, 2000 order that provides in relevant part:

4. Trial counsel was not ineffective for failing to present Isom's mental history or alleged pattern of self injury. Petitioner has not demonstrated that such evidence was relevant given the fact that the defense was predicated upon Petitioner's claim that Isom was the aggressor and was injured when Petitioner defended himself. Petitioner did not claim at trial that Isom injured herself and then fabricated or fantasized an attack by her boyfriend. Therefore, Petitioner has not shown that the evidence would have been relevant. Ind. Evid. R. 403. Further, Petitioner has not shown that the mental health records would have been proper impeachment. Ind. Evid. R. 608.

P.C.R. at 144. Wesley appeals.

## Standard of Review

■ In post-conviction proceedings, the petitioner bears the burden of establishing the grounds for relief by a preponderance of the evidence. Ind. Post Conviction Rule 1(5). On appeal from a negative judgment, to the extent the appeal turns on factual issues, the defendant must convince this Court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Trueblood v. State*, 715 N.E.2d 1242, 1248 (Ind.1999) (citing *Spranger v. State*, 650 N.E.2d 1117, 1119 (Ind.1995)).

## Discussion and Decision

■ Wesley contends that trial counsel rendered ineffective assistance by failing to obtain and use Isom's psychiatric records, which showed a history of delusional episodes and false claims of being physically harmed. Because no one was in the apartment with Wesley and Isom on the afternoon of April 9, 1991, the trial boiled down to a credibility contest. If the jury believed Isom's account—that Wesley, unprovoked and under the influence of drugs, kicked and beat her—convictions for criminal confinement and battery would follow. On the other hand, if the jury believed Wesley's version—that Isom, angered by suspicions of infidelity, physically attacked him and was injured as he repelled her—an acquittal would follow. Although the guilty verdicts strongly suggest that the jury found Isom more credible, the jury was missing some very important information to weigh in its credibility assessment.

Isom's psychiatric records show that she was first hospitalized in 1980 for "inappropriate behavior with delusional thinking." P.C.R. at 67. Three years later, she was again hospitalized when she told hospital staff that her niece had cut her with a razor and she was "bleeding from head to toe." P.C.R. at 90. The staff found no lacerations and only "old abrasions" on her body. P.C.R. at 128. She was diagnosed as "delusional" and admitted for an "acute psychotic episode." P.C.R. at 90, 92, 124. Isom was admitted again in 1989 on a police hold after she was found partially clothed in a McDonald's. She told police that she feared someone was out to hurt her but later told hospital staff that she had similar fears in the past and was delusional. During her 1989 hospitalization Isom attempted to call police to report that her husband had killed five children in Cleveland. She also told hospital staff that her boyfriend was a biker and had threatened to kill her if she pressed charges against him. Finally, she reported to hospital staff that a man named "Epolion Youngblood" was after her and had threatened to kill her. P.C.R. at 166.

■ The Sixth Amendment to the United States Constitution guarantees the defendant the right to effective assistance

of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance, the defendant must prove that: (1) counsel's performance fell below an objective standard of reasonableness based on prevailing norms; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687–88, 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

■■■ The State correctly points out that counsel is afforded considerable discretion in making strategical and tactical choices, decisions that are given deference on appellate review. *See generally Carter v. State*, 738 N.E.2d 665, 675 (Ind.2000). It contends that counsel's selection of a method of impeachment was a tactical choice. We disagree. Here, counsel made no choice and employed no method of impeachment. Although counsel testified that Wesley told him before trial that Isom had a history of mental illness, trial counsel did not investigate the matter or attempt to obtain the records. "[I]n order to make a reasonable tactical decision, counsel must have adequately investigated the client's case because 'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments

support the limitations on investigation.' " *State v. Holmes*, 728 N.E.2d 164, 172 (Ind. 2000) (quoting *Strickland*, 466 U.S. at 690–91, 104 S.Ct. 2052). In a case such as this that turned on the victim's credibility, we believe this omission was deficient performance. *Cf. Wright v. State*, 581 N.E.2d 978, 980 (Ind.Ct.App.1991) ("Due to the fact that the victim's credibility was the major factor in the case, it was crucial for the defense to admit any evidence that would have questioned her credibility.").[2]

Nevertheless, the State contends, and the post-conviction court found, that the records would not have been admissible under the Indiana Rules of Evidence. However, the proper inquiry is whether the evidence would have been admissible under the law applicable at the time of trial in 1991—not under the Evidence Rules, which were not adopted until January of 1994.[3]

Under the law existing at the time of trial, evidence was considered relevant, and thus admissible, if it tended to prove or disprove a material fact or shed any light on the guilt or innocence of the accused. *Cox v. State*, 475 N.E.2d 664, 672 (Ind.1985). Wesley claims that the omitted psychiatric records would have shown a "history of psychotic episodes, a pattern of falsely claiming to have been beaten, and self injury." Br. of Appellant at 9.

The omitted psychiatric records were

---

**2.** In Wesley's reply brief, counsel relies on this Court's opinion in *McCary v. State*, 739 N.E.2d 193, 198 (Ind.Ct.App.2000), *trans. granted.* However, two weeks before the brief was filed, our supreme court granted transfer, thereby vacating this Court's opinion. We remind counsel of the importance, especially when citing a recent case of this Court, of checking the status of transfer before relying on a case. We take an especially dim view of the omission here, where both Mr. McCary and Mr. Wesley are represented by the State Public Defender, who was served notice of the

grant of transfer in *McCary* well before the filing of the reply brief in Wesley's case.

**3.** This is not to suggest that the records would have been inadmissible under the Evidence Rules. If the issue arises on retrial, the Evidence Rules will control. Asking Isom about her history of delusions is a relevant and permissible line of inquiry under the Rules. If she denies such a history, the records would then be admissible to impeach her.

not entirely relevant.[4] The mere fact that Isom had past psychiatric illnesses and had been involuntarily committed is not ipso facto relevant to her credibility. Nor was her alleged history of self injury, when Wesley's story was not that she intentionally injured herself but rather that the injury occurred inadvertently in the course of a struggle during which he was attempting to fend off an attack from her. However, a history of delusions coupled with evidence that the witness relayed those delusions to others as being true is very relevant. Here, Isom's history of delusions sheds considerable light on the veracity of her account of the events of April 9, 1991. *See generally Hall v. State,* 176 Ind.App. 59, 62, 374 N.E.2d 62, 65 (1978) (observing that testimony that a rape victim had previously received psychiatric treatment for a propensity to lie "would have been admissible at trial for at least impeachment purposes").

In *Lusher v. State,* 181 Ind.App. 63, 390 N.E.2d 702 (1979), we reversed a conviction for delivering a controlled substance, which was based on the testimony of a "police informer" who admitted to having problems with "flashbacks," i.e., recurrences of the hallucinating effect of L.S.D. occasioned by his own use. *Id.* at 63–64, 390 N.E.2d at 703. In *Lusher,* the trial court allowed cross-examination as to whether the informer was under the influence of drugs at the time of the transaction, but it did not allow testimony about his history of hallucinations. We noted that "[t]he credibility of a witness may be attacked by showing a defect of capacity in the witness to observe, remember or recount the matters testified about." *Id.* at 64, 390 N.E.2d at 704. We found the

limitation on cross-examination so severe as to require reversal. "The jurors were entitled to have the benefit of this evidence so they could make an informed judgment as to the weight to place on [the informer's] testimony. The accuracy of his testimony was the key element in the state's case against Lusher." *Id.* at 65, 390 N.E.2d at 704.

Although *Lusher* deals with a direct appeal claim of impermissible limitations on cross-examination regarding hallucinations caused by drug usage, it is nevertheless relevant here. Isom's delusions, like the hallucinations of the police informer, affected her ability to remember and recount the matters about which she testified. Moreover, the jury should have been about told her history of delusions in order to make an "informed judgment" about the weight to place on her testimony. This is especially true here, as in *Lusher,* where the credibility of one witness was the key element of the State's case.

*Strickland* requires a showing of a reasonable probability of a different outcome. 466 U.S. at 694, 104 S.Ct. 2052. The evidence of guilt in this case was far from overwhelming. The trial was a credibility contest that pitted Wesley's word against Isom's. Isom testified at trial that she was on disability "[f]or recovering alcohol and drug addiction." R. at 169. Moreover, her credibility was in question, if not undermined to some extent, by her admission that she told an officer on the scene and the detective at the hospital that Wesley had "rammed the gun up me twice, poked it in my uterus twice," which she later admitted had never happened. R. at 187.

---

4. The 277 pages include records from visits as recently as 1997. These were admitted without objection from the State. However, because Wesley's claim of ineffective assistance is trial counsel's failure to obtain and use Isom's records at the time of his trial in 1991, any records after that time are not relevant to that inquiry. Accordingly, we decline to consider any post–1991 records.

Here, where Isom's testimony was tainted from the beginning by her false statement to police, we believe the omitted psychiatric evidence of delusions could have swayed the jury to reach a different verdict.[5] In light of all of the evidence, there is a reasonable probability that, had trial counsel obtained and used Isom's psychiatric records, Wesley would not have been convicted of criminal confinement and battery.[6]

As a final point, we briefly address and reject the State's argument that Isom's psychiatric records were newly discovered evidence. The post-conviction court made the following finding on this point:

> Petitioner's argument that trial counsel should have sought out the mental health records produced for the Post Conviction Relief hearing is actually an argument that the newly discovered evidence (the records) entitle Petitioner to a new trial. However, Indiana Courts have long held that to give such relief a nine part test must be met. *Augustin [Augustine] v. State*, 461 N.E.2d 101 (Ind.1984). Petitioner has failed to prove the following tests:
>
> 1. That the evidence is material and relevant;
> 2. That it is not merely impeaching;
> 3. That it is not privileged evidence;
> 4. And that the evidence would proba-bly produce a different result.

P.C.R. at 144–45.

Wesley has never argued that the psychiatric records were newly discovered evidence. Indeed, they were in existence at the time of his trial. The problem, as he correctly raises and argues it, is that trial counsel was ineffective for failing to secure and use the records. Accordingly, the law regarding newly discovered evidence is wholly inapplicable to this case.

Trial counsel's ineffectiveness in no way bears on the intimidation and resisting law enforcement counts, which dealt with Wesley's encounter with the police upon their arrival on the scene. He makes no claim of ineffective assistance as to these charges. Accordingly, we reverse Wesley's convictions for criminal confinement and battery and remand for a new trial as to these charges only.

### Conclusion

The trial court's denial of post-conviction relief as to Wesley's convictions for criminal confinement and battery is reversed

---

5. Citing *Carter v. State*, 738 N.E.2d 665, 674 (Ind.2000), the Attorney General boldly contends that "the failure to impeach a witness does not raise a reasonable probability that the result of the proceeding would have been different." Br. of Appellees at 5. This is not the holding of *Carter*. In *Carter*, our supreme court reviewed a claim that trial counsel was ineffective for failing to impeach a witness with a prior statement describing the perpetrator as wearing glasses. The court noted that, even if such impeachment had occurred, three other witnesses had identified the defendant and counsel had subjected the witness to a "vigorous cross-examination" as to his identification and memory of the incident. *Carter*, 738 N.E.2d at 674. Under these particular facts, the failure to impeach did not raise a reasonable probability of a different result.

6. Wesley also claims that trial counsel was ineffective for failing to move to suppress the shotgun taken from his apartment. However, he fails to satisfy either *Strickland* prong as to this claim. Testimony about the shotgun was an integral part of Wesley's defense; therefore, counsel cannot be declared deficient for not attempting to suppress it. Moreover, the failure to suppress the shotgun did not result in any prejudice to Wesley, who was convicted based on Isom's testimony about what Wesley allegedly did to her—not based on the shotgun, from which no inculpatory evidence was found.

and this case is remanded for a new trial as to those counts.

BAILEY, J., and BAKER, J., concur.